(No. 14472.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AUGUST H. HEEP, Plaintiff in Error.

*Opinion filed April 19, 1922.*

1. CRIMINAL LAW—*circumstantial evidence, to support a conviction, must be convincing.* Before a conviction can properly be had upon circumstantial evidence, alone, the guilt of the accused must be so thoroughly established as to exclude every reasonable hypothesis of his innocence, and the evidence must be sufficient to convince the jury, to a reasonable and moral certainty, that the accused, and no one else, committed the crime charged.

2. SAME—*when Supreme Court will reverse judgment of conviction.* Where a consideration of the whole evidence in a criminal case fails to establish the guilt of the accused beyond a reasonable doubt it is the duty of the Supreme Court to reverse the judgment.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

R. L. RUSSELL, and J. L. SPAULDING, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CAREY R. JOHNSON, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

About two o'clock in the morning of April 16, 1920, a fire was discovered in an empty dwelling house in Spring Valley belonging to Anna Heep, the wife of plaintiff in error. There is no competent evidence in the record showing who discovered this fire or who reported it. Several members of the volunteer fire department testify that an electric bell placed in the bed-room of each member for the purpose of calling them to duty was rung about 2 A. M. and that they immediately responded. The first fireman to

reach the building was Robert Bradbear. He testified that
the building was a one-story frame building located on the
south side of Erie street and the west side of Hennesy
street; that he found the doors and windows closed and
locked; that he could see a fire burning on the floor of the
middle room on the west side of the building; that smoke
was coming out at all openings; that he waited for the
hose wagon and helped make the connection as soon as it
arrived; that he broke a pane from a window on the west
side and put the nozzle of the hose through this opening;
that two of the doors were forced open so that the firemen
could get into the building; that the fire was soon under
control and did not do much damage; that there were five
or six oil stoves, a portable blacksmith's forge and a lot
of empty boxes and rubbish in the building; that the floors
were strewn with straw, excelsior and paper similar to that
used for packing merchandise for shipment; that it was
this rubbish that was burning; that some of the wallpaper
and some old curtains were burned and that the floors and
the walls in the rooms reached by the fire were scorched
and charred; that he went through all of the rooms in the
house before he left it to see that there was no fire burn-
ing; that he did not detect any particular odor in the rooms
and that he did not see any merchandise except that al-
ready described.

Four other members of the volunteer fire department
of Spring Valley testified that they responded to the fire
alarm; that they reached the building with the fire truck
shortly after two o'clock in the morning; that they broke
into the building and soon extinguished the fire; that they
found many empty boxes and crates and considerable rub-
bish scattered about the rooms; that they found in a room
in which there was no fire a half-box of miner's squibs;
that these squibs contained powder; that they found a bar-
rel filled with straw and shredded paper; that there was a
piece of gunnysack lying in the barrel on top of this paper

which was damp and which smelled as if it had been saturated with kerosene; that there was no fire in the room where this barrel was found; that there was no odor or evidence of kerosene at any other point in the building; that the barrel, with its contents, was taken from the building to the city hall and locked in the hose-room; that the barrel was the kind of barrel in which goods are packed for shipment, and that the paper in the barrel was not wet and that the barrel was dry.

Peter Clinton, chief of the fire department, testified that he responded to the call and arrived at the building with the fire truck; that he went to the home of plaintiff in error to notify him of the fire; that plaintiff in error lived with his family in the back part of the building in which his store was located; that he rattled the front door of the store a number of times but no one answered; that he went to the pool hall and called the telephone central and asked the operator to ring the telephone of plaintiff in error; that he returned to the building in which plaintiff in error lived and again rattled the front door of the building; that he went to the back part of the building and rapped on the windows but that he received no response; that he saw plaintiff in error the next day at the building where the fire had occurred and that plaintiff in error was removing some of the boxes and rubbish when he came along; that he told plaintiff in error to leave the building as it was for a time, and that the latter told him he would; that he asked plaintiff in error why he did not respond when he called him, and that plaintiff in error replied that he did not hear him.

Plaintiff in error, August H. Heep, is fifty-seven years of age and has lived in the city of Spring Valley for thirty-six years. He has been in business in that city at the same location now occupied by him since 1903. He conducts a hardware store in a building on the north side of and facing St. Paul street and on the east side of Hennesy street,

which is just one block south of the location of the build-
ing where the fire was discovered. This building is ninety-
four feet long and twenty-four feet wide. The north forty
feet of the building is used as the residence of plaintiff in
error, his wife and his ten-year-old son. Immediately east
of and five feet from this building is a smaller building in
which plaintiff in error and his wife conduct a confection-
ery and grocery store. The buildings are connected by a
passageway near the rear of the confectionery store. The
only telephone in the buildings of plaintiff in error was
located in and about the center of the confectionery store.
The sleeping-room occupied by plaintiff in error and his
family on the night of the fire was in the northeast corner
of the building, its west wall being about sixteen feet from
the east line of Hennesy street. The room had two outside
windows, which could have been reached by going back of
the building from Hennesy street. For some months prior
to the fire plaintiff in error had used the empty dwelling
house, belonging to his wife, as a warehouse for storing
goods similar to those kept by him for sale in his stores.

The fire chief reported the fire to the State fire marshal
and to the State's attorney, and plaintiff in error was in-
dicted under section 14 of the Criminal Code, which pro-
vides: "Whoever willfully and maliciously burns or sets
fire to or causes to be burned or set on fire any building
or any goods, wares, merchandise or other chattels which
are at the time insured against loss by fire, with intent to
injure the insurer, whether such person is the owner of
the property or not, shall be imprisoned in the penitentiary
not less than one nor more than ten years." He was tried
and convicted in the circuit court of Bureau county and
prosecutes this writ of error to review the judgment of
that court.

Plaintiff in error contends, among other things, that
the verdict of the jury is contrary to the evidence; that the
proof does not show him to be guilty of the crime charged

beyond a reasonable doubt; and that there is no evidence in the record showing that he set on fire or caused to be set on fire any goods, wares, merchandise or chattels mentioned in the indictment. Defendant in error answers that the circumstances all point to the guilt of plaintiff in error; that the firemen found the doors and windows locked and the fire burning inside the building; that plaintiff in error was the only person who had a key to the building; that he filed a claim with the insurance company the day following the fire, in which he claimed damage by the fire to property valued at $372.13, consisting of 400 pounds of sugar, forty-eight cans of salmon, forty-eight cans of condensed milk, sixty yards of linoleum, two wheelbarrows, 225 feet of rubber hose, two heating stoves, six gasoline stoves, a kerosene stove, 500 bars of laundry soap, 180 bars of toilet soap, seven step-ladders, a blacksmith's forge and twenty-four squibs; that this claim was fraudulent, and that it shows that plaintiff in error set fire to the building with intent to defraud the insurance company.

Plaintiff in error testified on the trial and denied that he set fire to the building or its contents, and denied that he knew anything about the fire before he was told of it after he had opened his store the next morning. He testified that the last time he was in the building before the fire was between four and five o'clock in the afternoon of April 15; that he went there with his son to get a washing-machine which was standing in the room where the sugar sacks were piled; that on this occasion he took the barrel which was introduced in evidence and set it outside the building, to be chopped for kindling; that the barrel was empty when he left it; that he returned to the hardware store with the washing-machine; that he did not leave his stores and dwelling again that evening or night; that he closed his hardware store about six o'clock and went into the confectionery store, where he remained until midnight; that he went from the confectionery store into his bed-room

and retired for the night; that he saw in the building, at the time he was there in the afternoon, all the articles which he listed in his claim with the insurance company; that when he visited the building the day following the fire the only articles remaining in the building were some gasoline stoves, the blacksmith's forge and the squibs; that there was no evidence of the missing merchandise having been damaged or consumed by the fire; that in his opinion the articles were removed from the building before the fire started; that he was not notified of the fire by any member of the fire department and that he learned of it the next morning from an outside source; that he did not hear any rapping on the doors or windows of his store or dwelling; that he did not hear the telephone ring; that he could not have heard it ring if he had been awake, because of the distance and the obstructions between the place where the telephone was located and the room where he was sleeping. The testimony of his son is to the same effect.

Eleven men and three women, who had known plaintiff in error for periods covering from twenty-five to forty-five years, testified that he had always maintained the reputation of a law-abiding citizen in the community where he resided and conducted his business. One of these witnesses was a banker who was the agent of the insurance company that had the insurance on the property of plaintiff in error, and five others were merchants of the city of Spring Valley. This evidence stands in the record unquestioned and uncontradicted.

This verdict rests solely upon circumstantial evidence. Such evidence is legal evidence and is oftentimes more reliable than direct evidence, but the well-established rule is that before a conviction can properly be had upon circumstantial evidence, alone, the guilt of the accused must be so thoroughly established as to exclude every reasonable hypothesis of his innocence. To warrant the conviction of one accused of crime where the evidence is wholly circum-

302–34

stantial, the evidence must be of that character that convinces the trier, to a reasonable and moral certainty, that the accused, and no one else, committed the crime charged. (*People* v. *Ahrling,* 279 Ill. 70.) We cannot say that the evidence in this case is of that character. The fact that a rag having about it the odor of kerosene was found in one of the rooms of the building proves nothing. It was not used to kindle the fire and was not in the room where the fire was burning. The presence of the straw and shredded paper and other rubbish is fully and satisfactorily explained by the use that was being made of the building. There are many suspicious circumstances connected with this fire, but a conviction cannot rest on suspicions. About the only circumstance that directs the suspicion to plaintiff in error is the fact that he filed a false claim with the insurance company, seeking to obtain pay for merchandise that was not damaged or destroyed by the fire. Whether the jury would have been justified in finding plaintiff in error guilty of an attempt to obtain money from the insurance company by false pretenses is not the question in this case. The indictment did not charge him with that offense.

Recognizing to the fullest extent the doctrine to which this court is committed, that it is the province of the jury to determine what weight should be given to the testimony and what credit should be given to the witnesses, the responsibility is finally cast upon this court to determine whether the evidence in the record is sufficient to support the judgment of conviction. Where, the whole evidence considered, it fails to establish beyond a reasonable doubt the guilt of the accused it is the duty of this court to reverse the judgment. (*Mooney* v. *People,* 111 Ill. 388; *Campbell* v. *People,* 159 id. 9; *Keller* v. *People,* 204 id. 604; *People* v. *Freeland,* 284 id. 190; *People* v. *Stoneking,* 289 id. 308.) We have read all of the evidence in this record, and after weighing and considering this evidence we entertain a serious doubt of the guilt of plaintiff

in error. Safety and justice require that the cause should be submitted to another jury.

The judgment is reversed and the cause is remanded to the circuit court of Bureau county for a new trial.

*Reversed and remanded.*