WILLIAMS *v.* STATE OF INDIANA.

[No. 13,840. Filed January 29, 1930.]

*Harry C. Meloy* and *Fitzgerald & Fitzgerald*, for appellant.

*James M. Ogden*, Attorney-General, and *E. Burke Walker*, Deputy Attorney-General, for the State.

NEAL, C. J.—Appellant was charged with the crime of arson by the grand jury of Jennings county. The indictment is in four counts. On the first trial, the appellant was found guilty on the second count of the indictment. A new trial was granted by the court. On the second trial, appellant was again found guilty on the second count of the same indictment. The court rendered judgment on the verdict of the jury and sentenced appellant to the Woman's Prison. The trial court overruled the motion for a new trial, to which an exception was taken at the time. Appellant assigns as error the overruling of her motion for a new trial and presents two causes: (1) The verdict of the jury is not sustained

by sufficient evidence; (2) the verdict is contrary to law.

A resume of the evidence favorable to the State is as follows: On and prior to September 3, 1927, the appellant was the owner of a small dwelling house to which was joined a store or business room located in the town of Brewersville, Jennings county, Indiana. The appellant lived in the house and operated a small dry goods and grocery store. A railroad passes through the town, and appellants' residence and storeroom were located about 300 feet from the railroad. In the summer of 1927, the appellant was engaged in making repairs on her property in Brewersville. An insurance agent of North Vernon learned of the fact and solicited the appellant for insurance and was informed by appellant that she had insurance. Afterwards, the appellant, her existing insurance having been cancelled, called upon the insurance agent at North Vernon to insure her real and personal property. The agent made an inspection of the premises, and, after the examination of the buildings, stock of goods in the grocery store, household goods and fixtures so owned by appellant, the agent informed her of the several amounts he would carry on the several items of real and personal property. The appellant made no suggestions as to the amount of insurance, only that she wanted service and protection, and the insurance agent distributed the insurance in several companies, which insurance aggregated $2,000 on the buildings, $1,500 on the stock of merchandise, $300 on fixtures and $500 on household goods. The premiums were paid by the insurance agent and the appellant has partially reimbursed the agent. The several amounts of insurance were ascertained by the insurance agent according to the value of the real estate and personal property as determined by him.

In August, 1927, the appellant met her daughter at the Columbus fair. At that time, the appellant brought

with her some canned goods and things from the store. The appellant, in the course of the conversation, remarked to her daughter that she brought all she could without arousing suspicion. The daughter was unable to recall whether she wrote her mother asking her to bring the several items of groceries; however, she took the groceries home and used them on her table. The daughter, at a later date, attempted to have a guardian appointed for her mother, but dismissed the petition.

On or about Thursday, September 3, 1927, a Miss St. Clair visited appellant, and was met at the train at North Vernon by appellant at 10:30 a. m. When they started to Brewersville, they stopped at a filling station and purchased gasoline, a part of which was put in the car and some in a can. Then the appellant purchased some mixed pop, candy and ice and continued home, arriving at about noon. The can which was filled with gasoline was red on the outside and held approximately three gallons of gas. When they arrived at appellant's home in Brewersville, Richard, the 15-year-old son of the appellant, took the gasoline can upstairs. Miss St. Clair remained at appellant's home until Saturday. On Friday, appellant, Miss St. Clair and appellant's son Richard cleaned the house. Richard used coal oil or kerosene in mopping the floor of the kitchen, which was covered with linoleum. Papers were carried out of the store and burned. On Friday evening, appellant and Miss St. Clair went to North Vernon and attended a show. They returned about 11 o'clock p. m., ate a lunch, and the guest retired. There were four rooms downstairs. Appellant and her guest, Miss St. Clair, slept in the same room downstairs. At the time the guest went to bed, Richard was sleeping in a chair and the appellant was still seated at the table eating. The guest awakened about 2 or 3 o'clock; appellant was in bed with her, and remarked that it was daylight and

called to her son Richard "to get up and look out." Richard called out that the house was on fire. Appellant and her guest escaped through the west door of the bedroom. They did not have time to dress. When they reached the outside, a fire was blazing from the roof of the house. A few articles were carried out of the house, consisting of a stand, table and trunk. Appellant had a conversation with her guest after the fire. The guest was asked if she had been awake during the night, to which she replied in the negative. Appellant said she had been upstairs to the toilet during the night, but did not observe anything suspicious.

A witness gave evidence to the effect that she was in the store of appellant in August, 1927, purchasing some bread; that appellant was using a quart spray which contained coal oil in order to rid the place of flies; that she passed the store in the spring of the year and Richard was using coal oil in sweeping out the store. Several witnesses gave evidence as to observing the fire; that it started near the roof and that the fire burned two hours; that appellant and her son made every effort to remove goods from the house. There is evidence to the effect that appellant had said she was going to sell the store; that in August, 1927, the appellant was sorting papers in her home; when she was asked questions as to what she was doing, she replied: "I am sorting over these papers. You don't know what might happen." All of the witnesses agree with one another that the fire was first discovered in the second story, although some of them did not see the fire until it was blazing in the roof. A witness gave evidence that the building could be replaced for 11 or 12 hundred dollars provided old timber was used; that if old lumber could not be obtained and good material be used, a different calculation would be necessary.

Richard, on behalf of appellant, testified that he was

15 years of age and attended school; that, on Thursday, he did purchase three gallons of gasoline and that, when he arrived home that day, he placed the gasoline can under the stairway; that, on the following day, he put two gallons of the gas in the car, and with the remaining gas he washed his pants; that his mother baked some pies and cakes Friday morning to sell in the store; that after the guest retired Friday night, he helped his mother dry the dishes and went to bed; after he retired, his dog commenced to scratch on the door and he got up and let him in, and the dog slept at the foot of his bed; that he was awakened by the guest yelling "fire"; that he jumped out of bed, assisted his mother in getting out of the house and then gave the alarm of fire; that practically all of his clothes were burned in the fire; that he was present in Columbus when his mother gave the daughter some groceries, which consisted of some coffee, jelly and canned corn, and that his sister removed the groceries from his mother's car; that it was not the first time his mother had helped his sister by giving her canned goods; that he did not hear any remark that the daughter attributed to the appellant; that the house was piped with natural gas, which was used in cooking and lighting, and the gas stove leaked in the kitchen. Another daughter testified that she was present at the Columbus meeting and heard no such remark to the effect that her mother would have brought more canned goods but she was afraid of arousing suspicion.

There was no evidence as to the value of the goods and merchandise which the second count of the indictment alleges was burned by the appellant to defraud the Colonial Fire Underwriters of the National Fire Insurance Company, the Caledonian American Insurance Company and the Niagara Fire Insurance Company.

The Attorney-General, in support of the judgment of the trial court, says that the evidence is circumstantial

and of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove guilt of the accused and the other favorable to her innocence, consequently, it is not within the province of an appellate tribunal to determine which inference ought to control the jury, citing *Lee* v. *State* (1921), 191 Ind. 515, 132 N. E. 582; *Biddle* v. *State* (1927), 199 Ind. 284, 157 N. E. 280; *McQueary* v. *State* (1928), 199 Ind. 700, 160 N. E. 291; that only the evidence favorable to the State and the reasonable inferences that may be drawn therefrom may be considered on appeal; that the evidence proves "appellant's expectancy of and preparation for fire, a motive to gain by a fire, juxtaposition or exclusive contact with the property destroyed and its speedy destruction, and a plan to allay suspicion; as to emotion or motive, it is shown externally (as distinguished from intent) by the possibility of gain and internally by the statement of her condition of mind as not wanting to arouse suspicion"; that the motive is disclosed by the financial gain to be derived from the collection of the insurance; that appellant had the exclusive contact and dominion over the seat of the crime; that "the splitting of the amount of the insurance among foreign companies widely distant from a source of knowledge and in small amounts was, of itself, an indication of a fraudulent purpose"; that "whether the mopping of the floors and the spraying of oil stopped at the terminus of gross negligence or entered the domain of crime was a question for the jury."

It is the law that an appellate tribunal will not disturb the verdict of the jury when the evidence is circumstantial and of such a character that two conflicting inferences may be reasonably drawn by the jury, one favorable to or tending to prove the guilt of the accused, and the other favorable to his

innocence. However, the rule of law has no application to the consideration of circumstantial evidence in an appellate tribunal unless two conflicting inferences could have been reasonably drawn from the evidence by the jury. When the evidence is of such a character that no reasonable inference of guilt can arise from the circumstances proved, the rule of law as above stated cannot be invoked by the State. Mere suspicion of guilt arising from the proved circumstances cannot take the place of a reasonable inference. In the case of *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265, the Supreme Court said: "The settled rule in this State requires that the material facts in issue be supported by some evidence, and this question is one of law reviewable on appeal. . . . This court will not weigh the evidence, nor will it say that a mere spark or trifle is sufficient to sustain an issuable fact."

Undoubtedly the State was entitled in this case to introduce evidence to show the motive of appellant. *Stitz* v. *State* (1885), 104 Ind. 359, 4 N. E. 145. However, when we examine the evidence as to financial gain that would accrue to appellant by the destruction of the goods, wares and merchandise in the store, the only evidence of the value of the same is of June, 1927, made by the insurance agent. He said the goods, wares and merchandise were of the value of $2,000 and he fixed the amount of insurance thereon at $1,500. There is no evidence of the value, separately or collectively, of the house, storeroom, fixtures or household goods at the time of the fire. The evidence of the insurance agent negatives the idea that appellant would have gained by the destruction of her property. If the facts were otherwise, the State should have proved them. The Attorney-General, in his brief, quotes from Underhill, Criminal Evidence (3d ed.), §563, as follows: "If the accused is charged with the arson of his own

house, it may always be shown to supply a motive that he was financially embarrassed at the time, or disheartened, and that he had overvalued and unduly insured his property." There is no evidence that appellant had encumbered her property by mortgage, that she was owing for merchandise, or that she was obligated to a bank or any person for money borrowed. The evidence fails to disclose any motive on the part of appellant.

The State attaches much weight to the fact that the insurance was distributed to several insurance companies instead of one company. There is not a scintilla of evidence that the appellant had anything to do whatsoever with the distribution of the insurance. In fact, the evidence is otherwise. Surely, under the facts in this case, the acts of the insurance agent in splitting the amount of insurance among foreign companies was of itself no indication of a fraudulent purpose on the part of appellant.

We attach little, if any, significance to the evidence that appellant used kerosene in mopping the floor of the store-room, which was covered with linoleum; the fire did not originate in the storeroom but in the second story near the roof. It appears from the evidence that it was the custom of appellant to use kerosene to clean the floor of the storeroom. The fact that kerosene was contained in a quart spray and was used by appellant to kill flies proves nothing.

As to the gasoline purchased at North Vernon, three gallons of which were placed in a red can and taken to appellant's home, the evidence on behalf of the State is to the effect that Richard took the can of gas upstairs. No circumstance or set of circumstances appear in evidence that would justify a legitimate inference that the gasoline was used to kindle or accelerate the fire by any one. However, Richard said that two of the three

gallons of the gas were placed by him in the gas tank of the car and the remaining gallon was used by him to clean his clothes. No evidence was given to contradict his statement, although the State's witness, Miss St. Clair, was present at appellant's home during the entire time and assisted in cleaning the house and premises on Friday. The Illinois Supreme Court, in the case of *People* v. *Heep* (1922), 302 Ill. 524, 135 N. E. 64, in commenting on the evidence in an arson case, said: "The fact that a rag having about it the odor of kerosene was found in one of the rooms of the building proves nothing. It was not used to kindle the fire and was not in the room where the fire was burning. The presence of the straw and shredded paper and other rubbish is fully and satisfactorily explained by the use that was being made of the building. There are many suspicious circumstances connected with this fire, but a conviction cannot rest on suspicions."

In determining whether a reasonable inference of guilt arises from the proved circumstances of this case, we must not be unmindful that the burden rests upon the State to prove the *corpus delicti*. In cases of arson it is now recognized as the universal rule that it is not only necessary in order to establish the *corpus delicti* that the evidence disclose the burning of the building as charged, but "it must also appear that the burning was by a wilful act of some person criminally responsible, and not as the result of natural or accidental causes." 2 R. C. L. 514, §17, and authorities cited; 2 American and English Ency. of Law (2d ed.) 934; 4 Elliott, Evidence §2807.

After a careful review of the evidence, we fail to find a chain of circumstances that by any process of reasoning brings us to the conclusion that a reasonable inference of guilt arises therefrom.

Under the facts of this case, the house, storeroom,

goods and merchandise were destroyed by fire. The law implies that the fire was the result of accident or some providential cause, rather than a criminal design, unless the evidence proves otherwise. *Phillips* v. *State* (1859), 29 Ga. 105; *Stallings* v. *State* (1872), 47 Ga. 572; *State* v. *Carroll* (1892), 85 Iowa 1, 51 N. W. 1159. This, the State of Indiana has failed to do.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.