## HERMAN *v.* STATE OF INDIANA.

[No. 30,722. Filed September 20, 1965. Rehearing denied
October 19, 1965.]

*Joseph P. Sullivan* and *William C. Erbecker*, of Indianapolis, for appellant.

*John J. Dillon*, Attorney General, and *James Manahan*, Deputy Attorney General, for appellee.

LANDIS, J.—Appellant, a police officer of the city of Indianapolis, was indicted for bribery and after a jury trial was

convicted and sentenced for a term of two (2) to fourteen (14) years and fined in the sum of one thousand dollars ($1,000.00). Appellant assigns as error on appeal the over-ruling of his motion for new trial.

Among the numerous contentions of appellant on this appeal are the contentions that the verdict of the jury was not sustained by sufficient evidence, was contrary to law, and that the court erred in refusing to peremptorily instruct the jury to return a verdict for appellant.

In order to consider this matter it will be necessary that we examine the evidence in the cause favorable to appellee which was substantially as follows:

From the late nineteen thirties through the early nineteen sixties there was a large scale gambling operation in the city of Indianapolis owned by one Isaac Mitchell who was also known as Tuffy Mitchell. During these years Mitchell acquired a long police record and became well known to the Indianapolis Police Department as a numbers racketeer.

Mitchell's organization was a sizeable gambling syndicate and during the four days immediately preceding its demise, which were apparently typical, it netted $8,200.00 as shown by accounting tapes introduced at the trial.

Mitchell's syndicate derived its huge profits from numerous customers who seldom bet more than one dollar and frequently as little as one cent. Each day the winning number was taken from the newspaper from certain digits in the published averages of stock on the New York Stock Exchange. The bettors selected any numbers they desired to bet on from such sources as consultation with dream books, license plates, or from just thinking up a number.

Customers were served by some three hundred to five hundred free-lance employees in the Mitchell operation called "writers." The writers would inscribe the number being wagered on a tri-copy order book together with the writer's own code number. One copy was given to the customer, one retained by the writer and one turned over to the Mitchell syndicate.

The slips from the syndicate were turned over to messengers who delivered them to "pick-up men" who took them to the count house where the winning slips would be separated and the day's expenses and net profit computed. The location of the count house was constantly being changed and it was known only to a very few people. At the count house all receipts and expenditures were accounted for to the last penny. It was understood Mitchell trusted nobody and that he double-checked every recorded expense.

While Mitchell's gambling enterprise was efficiently run it had the glaring defect of being operated against the law and was therefore subject to arrests and harassment. If a policeman chose to watch one of its customer's places he could interfere with customers coming and going, could prevent the messengers or runners from picking up the slips, could stop the pick-up men from taking them to the count house, or do any number of things that would harass the gambling operator.

Whenever one of Mitchell's employees was arrested the syndicate would absorb the costs of the bail bondsman, the lawyer and the fine, if any. Mitchell's chief lieutenant, Van Wert Mullin, paid such bills and accounted for the same to Mitchell by making out accounting tapes for the amount thereof. Mullin also paid bribe payments in the same manner to numerous Indianapolis policemen. These payments were made regularly at the end of the police shift each month. Police captains and lieutenants received $30 per shift, and sergeants $20 per shift. Bribes were also paid to persons other than police officers and these payments ranged up to $1,500.00.

In approximately 1959 Mitchell first delegated the task of paying bribes to police officers to Mullin and he had been paying bribes to them since that time. On May 29, 1963, appellant was a police officer of the city of Indianapolis, was sergeant of a division, and assigned to Car 7 on the far north side of the city. His official duties included the duty

to enforce the gambling laws of the state and also included conformity to standards of behavior outlined in police department rule book, rule 22, providing no officer should leave his assigned district without permission from his commanding officer.

On May 28 and 29, 1963, appellate was working twelve hour shifts from 8:30 p.m. to 8:30 a.m. because of the increased workload attending the running of the Indianapolis 500 mile race. At 7:20 a.m. on May 29, 1963, appellant reported to headquarters he was leaving his patrol car to check a possible vice violation. At about the time of the so-called "vice check" Van Wert Mullin testified he received a phone call from appellant in which appellant told Mullin he would be dropping by. Shortly thereafter appellant drove into the alley behind Mullin's house in a police car wearing his uniform. Mullin gave appellant $40 and went back into his house. Mullin's residence at 2008 Koehn Street, Indianapolis, was an area outside appellant's assigned district.

Of the $40 which Mullin gave to appellant, $20 was to go to appellant and $20 to another police officer. In exchange for the $20 appellant was to avoid harassing Tuffy Mitchell, his agents, customers, and pick-up men. This was compensation for appellant's services on behalf of Mitchell's syndicate for a four week period.

Mullin and appellant first met back in 1960 at the Pink Poodle lounge owned by Tuffy Mitchell. There was evidence Mitchell was present and introduced the two men. Appellant went to the Pink Poodle on that occasion with another police officer and their wives for some barbecue. When the festivities at the Pink Poodle were over the group went to Van Wert Mullin's home where they partook of a case of whiskey.

Appellant admitted to "perhaps twelve or fifteen" conversations with Tuffy Mitchell prior to the Pink Poodle meeting in 1960 and that thereafter he had his conversations with Mullin. Appellant stated he had met with Mullin on more occasions than he could remember and attempted to explain

the meetings with Mullin by saying they involved conversations about athletics and current events and were for the purpose of cultivating Mullin as an "informer."

At the trial appellant claimed he had accomplished three misdemeanor arrests because of information he obtained from Mullin; but, when appellant testified before the grand jury shortly before he was indicted, he stated he made no arrests as a result of the information furnished by Mullin. Although appellant described the cultivation of informers as one of his standard police methods he admitted he never attempted to cultivate any informers with respect to the Mitchell syndicate. Appellant admitted being at Mullin's home between two and four times in the six months immediately prior to May 29, 1963.

On June 1, 1963, Mullin made a routine accounting of the week's expenditures to Tuffy Mitchell. The accounting included a tape record of the bribe transactions which had occurred the previous week. On June 2, 1963, the Intelligence Division of the Internal Revenue Service empowered with search warrants made a raid on Mitchell's home and found much gambling paraphernalia. While such officers of the Revenue Service were searching Mitchell they found in his wallet the accounting tape Mullin had given him the previous day. Upon this tape appeared appellant's name and that of other policemen and opposite each name the amount of money each person was allegedly paid.

Appellant by his own evidence had been able to make a large number of numbers arrests during the early years of his career which began in 1947, and prior to 1960 had subjected Van Wert Mullin to considerable harassment. But since that time there had been a great lull in appellant's anti-gambling activities. During the five months immediately prior to the raid on Mitchell's home appellant was on active duty in a high-crime neighborhood and made numerous other arrests but made no numbers arrests. However, after being informed by Van Wert Mullin that his name was on the accounting tape

seized by the federal agents in their raid, appellant tended to his duties with newfound vigor, and during the three months immediately preceding his indictment he made five numbers arrests.

A natural deduction from this evidence was that appellant had something to offer in exchange for the money he was receiving from the Mitchell syndicate. His annual payments totaled approximately $240, and one arrest of a Mitchell employee could easily have accounted for an equivalent expense.

Appellant's counsel has argued that the evidence was insufficient to sustain the jury's verdict of guilty in that there was no proper, competent evidence as to the purpose of the purported payment of money to appellant. Mullin testified that in exchange for the $20 payment appellant was to avoid harassing Tuffy Mitchell, his agents, customers, and pick-up men. The evidence showed that the harassment prior to 1960 of the Mitchell syndicate by appellant subsided after that time, and this was the same period when by appellant's admission he began his associations and conversations with Mitchell's chief lieutenant, Mullin. We are unable to find supporting evidence that appellant did this to cultivate Mullin as an "informer," as appellant testified. On the contrary there is evidence sustaining the contrary inference that the payments were to reward appellant for overlooking law violations and for failing to harass and make arrests for the syndicate's huge numbers and gambling operation. The accounting tape was documentary proof of the payment of money to appellant and he has offered no evidence to disprove the purpose was a bribe. Certainly the jury had the right to draw an inference upon the foregoing evidence that the money was paid to appellant for an unlawful purpose. A conviction may be sustained on the basis of circumstantial evidence if there is some substantial evidence of probative value from which a reasonable inference of guilt may be drawn. *Wagner* v. *State* (1963), 243 Ind. 570, 575, 188 N. E. 2d 914, 917; *Weaver* v. *State* (1963), 243 Ind. 560, 565, 187

N. E. 2d 485, 487; *McCoy et al.* v. *State* (1958), 237 Ind. 654, 660, 148 N. E. 2d 190, 193. We must conclude the evidence was sufficient to sustain the verdict and similarly was sufficient to authorize the court to overrule appellant's request for a peremptory instruction.

Appellant has further contended the court erred in overruling his motion to quash count two of the indictment.

Under Rule 1-3B of this Court appellant was required to file memorandum with his motion to quash stating specifically wherein the indictment was defective in relation to the statutory ground of the motion to quash relied on, and is deemed to have waived any ground not so specified in the memorandum.

Appellant's motion to quash count two of the indictment was predicated upon two grounds, viz: (1) That the facts stated in the indictment do not constitute a public offense and (2) That the indictment does not state the offense with sufficient certainty. However, the memorandum fails to comply with said rule by making any specific reference to either of the above statutory grounds of the motion relied on but simply argues generally as to the insufficiency of the indictment. This requirement of the rules is simple to comply with and enables the trial court intelligently to pass upon any particular objections to the indictment or affidavit without waiting until an appeal is taken to ascertain what appellant's real objections to the charge, in actuality are. This expedites the early disposition of criminal cases and we are not inclined to nullify the beneficial purposes of such a rule by re-opening on appeal questions pertaining to motions to quash indictments or affidavits which appellant, who was represented by counsel, did not see fit to present to the trial court. Appellant has also failed to include the memorandum in support of his motion to quash, in the concise statement of the record in his brief contrary to Rule 2-17(d) and 2-17(f). We must conclude no question is before us as to the propriety of the court's overruling of the motion to quash.

Appellant also has contended the lower court erred in its ruling pertaining to the alibi statute when it refused to require the State of Indiana to make its answer to appellant's notice of alibi more specific as to the time of the alleged offense. The statutes governing the matter of alibi are set out in the footnote.[1]

---

1. "Whenever a defendant in a criminal case in a court other than that of a justice of the peace shall propose to offer in his defense evidence of alibi, the defendant shall, not less than ten [10] days before the trial of such cause, file and serve upon the prosecuting attorney in such cause a notice in writing of his intention to offer such defense. The notice shall include specific information in regard to the exact place at which the defendant claims to have been at the time stated in the indictment or affidavit as the time of such offense. The provisions of this statute shall not apply in case the court sets the trial for a date less than fourteen [14] days ahead." Burns' § 9-1631 (1956 Repl.), Acts 1935, ch. 228, § 1, p. 1198.

"In the defendant's notice, as provided in the next preceding section, the defendant may also expressly require the prosecuting attorney to file and to serve upon the defendant or upon his counsel a specific statement in regard to the exact date which the prosecution proposes to present at the trial as the date when, and the exact place which the prosecution proposes to present at the trial as the place where, the defendant was alleged to have committed or to have participated in the offense. If the defendant's notice requires such statement by the prosecuting attorney, or if the prosecuting attorney proposes to present at the trial as the specific date when the defendant committed or participated in the offense a date other than the date stated in the defendant's notice, the prosecuting attorney shall file and serve such statement upon the defendant or upon his counsel not later than eight [8] days before the trial. If the prosecuting attorney's statement to the defendant names a specific date other than the date which is stated in the indictment or affidavit and in the defendant's notice, the defendant shall not later than four [4] days after the filing of the prosecuting attorney's statement file and serve upon the prosecuting attorney defendant's second notice presenting for such changed date the same details required for the original notice." Burns' § 9-1632 (1956 Repl.), Acts 1935, ch. 228, § 2, p. 1198.

"In the event of the failure of the defendant to file and to serve the defendant's original notice, as prescribed herein or the defendant's second notice as prescribed herein, or in the event of the failure of the prosecuting attorney to file and to serve the prosecuting attorney's statement as prescribed herein, the court may in its discretion extend the time for filing the same. At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney the defendant's original notice of alibi as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant, exclude evidence offered by the defendant to establish an alibi. At the trial, if it appears that the prosecuting attorney has failed to file and to serve upon the defendant or upon his counsel the prosecuting attorney's statement as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the prosecuting attorney, exclude evidence offered by the prosecuting attorney, to show that the

After the appellant filed notice of alibi in this case the State filed answer to such notice, in pertinent part as follows:

"The time and date which the prosecution proposes to present at the trial of the above-entitled cause as the time and date when the defendant committed the offense charged was: Between 6:00 O'Clock A.M. May 28, 1963, and 12:00 Noon of May 29, 1963."

Appellant filed motion to require the State to make the answer to the notice of alibi more specific, setting up that the statute required *inter alia* that the State set forth the exact date when the offense was alleged to have been committed but that the State's answer in stating the offense occurred between 6:00 a.m. on May 28, 1963, and 12:00 noon on May 29, 1963, alleged two dates and encompassed a period of 30 hours. The court overruled appellant's motion to make specific.

Appellant then filed a second notice of defense of alibi under the statute setting forth appellant's whereabouts during the time and dates mentioned in the foregoing answer of the State.

Appellant also complains of the trial court's admission over his objection of evidence as to the commission of the offense during the 30 hours specified in the State's answer to the notice of alibi, which appellant states, was too broad a period to comply with the statute.

The State in reply has argued, that at the time the prosecuting attorney's statement in answer to the alibi notice was filed in August of 1964, its witness Van Wert Mullin, who was serving time in the Federal Prison at Terre Haute,

---

defendant was at a place other than the place stated in the defendant's original notice and that the time was other than the time stated in the defendant's original notice. At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney, the defendant's second notice as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant to establish that he was at a place other than the place specified in the prosecuting attorney's statement, and that the time was other than the time stated in the prosecuting attorney's statement." Burns' § 9-1633 (1956 Repl.), Acts 1935, ch. 228, § 3, p. 1198.

Indiana, was refusing to talk to the attorneys for the State, and that more specific information than that provided was not available. It further appears that at the trial Van Wert Mullin testified the offense was committed on May 28 or May 29, in the year 1963, between 8:00 and 10:00 o'clock a.m.

It is of course true, as appellant concedes, where time is not of the essence of the offense, under an allegation of a specific date, the offense may ordinarily be proved as having occurred at any date preceding the filing of the affidavit or indictment which is within the statute of limitations. This rule we have held yields to the limitations imposed by the alibi statute when such statute is invoked. *Evans* v. *State* (1946), 224 Ind. 428, 433, 68 N. E. 2d 546, 548.

Section 2 of the alibi statute, above cited, in substance provides the defendant may require the State to file a specific statement, in regard to the exact date (and the exact place) the prosecution proposes to prove such defendant committed the crime. The section following provides that at the trial if it appears the prosecuting attorney has failed to file and serve the prosecuting attorney's statement as prescribed herein, the court shall in the absence of a showing of good cause for such failure by the prosecuting attorney, exclude evidence by the prosecuting attorney that the defendant was at a place other than as stated in defendant's original notice and that the time was other than as stated in the defendant's original notice.

Appellant's motion to make more specific was general in form and did not allege an absence of good cause on part of the prosecuting attorney in failing to make a more definite statement. We are unable to see how the court's overruling of the motion was an abuse of discretion so as to constitute reversible error. See: 2 Works' Ind. Pract., Lowe's Rev., § 23.9, p. 115.

With regard to whether the court erred in admitting over appellant's objection the prosecuting attorney's evidence that

the time was other than the time stated in defendant's original notice, we find appellant has waived such question by failing properly to raise the same in the trial court.

In order to present a question of error in the admission of evidence over objection in the trial court, an appellant must set forth the question, his objection, the ruling of the court, and the answer of the witness. *Jay* v. *State* (1965), 246 Ind. 534, 536, 206 N. E. 2d 128, 129; *Polson* v. *State* (1965), 246 Ind. 674, 675, 207 N. E. 2d 638, 639; *Ray* v. *State* (1954), 233 Ind. 495, 499, 120 N. E. 2d 176, 178, 121 N. E. 2d 732; F. W. & Hamilton, Ind. Trial & App. Pract., § 1812, p. 388. In his motion for new trial appellant has not set forth the answer of the witness and an examination of the record discloses that the question was not in fact answered. Subsequent questions and answers which appear in the trial court's record without objection cannot properly be complained of for the first time in this Court.

Appellant has next contended the trial court erred in granting, three days before the trial, the State's motion to amend the indictment so as to change the date of the offense alleged from on or about May 31, 1963, to "* * * Between 6:00 A.M., May 28, 1963 and 12:00 noon, May 29, 1963."

The applicable statute governing this matter is Burns' § 9-1133 (1956 Repl.), Acts 1935, ch. 189, § 1, p. 928, which provides:

"The court may at any time before, during or after the trial amend the indictment or affidavit in respect to any defect, imperfection or omission in form, provided no change is made in the name or identity of the defendant or defendants or of the crime sought to be charged."

Appellant has conceded in his brief that where time is not of the essence of the offense, an amendment of the indictment as to the time of the offense would be an amendment as to form only. However, appellant contends that time is of the essense of the offense when alibi is pleaded, citing: *Evans* v. *State* (1946), *supra*.

The Evans case did not so hold however, but as heretofore indicated, after reiterating the rule that where time is not of the essence, any date prior to the filing of the indictment within the statute of limitations could be proved, simply stated such rule was subject to the limitations imposed by the alibi statute when invoked. We have heretofore pointed out why appellant's contentions concerning his motion to make specific and his objections to questions asked involving the alibi statute were not meritorious. In the Evans case the prosecuting attorney's statement in reply to the prisoner's notice of alibi in fact was quite similar to that in the case at bar as the date was there fixed as being "* * * between 10 o'clock P.M. November 24, and 7 o'clock A.M. of November 25. * * *" This Court there in affirming the judgment of conviction, stated at p. 433 of 224 Ind., and p. 548 of 68 N. E. 2d:

"* * * It was not necessary, as appellant seems to think, to amend the affidavit to show the offense as having occurred between those hours. * * *"

If an amendment to the affidavit was not necessary to specify the hours alleged in the alibi statement in the Evans case, we are unable to see how an amendment of the same nature, which happened to be allowed in the case at bar, could be considered material or harmful to appellant.

The next contention of appellant is that the court erred in admitting hearsay evidence from the witness Van Wert Mullin to prove an essential element of the offense, viz: that the purpose of the alleged payment of money to appellant was to influence him with respect to his official duty.

An examination of the record however discloses no objection by appellant on the ground of hearsay, the question and appellant's sole objection being as follows:

"Q. And what was the defendant to do during that period of time in exchange for this twenty dollars?

"Again, I will object, Your Honor, the witness has testified that anything that was made was made in connection with an agreement with Mitchell. We have heard nothing about that, we don't know anything about what the agreement was, when it took place, what was said."

We cannot properly consider objections to the admission of evidence made for the first time on appeal. There must be a finality sometime to the matter of making objections if litigation is ever to come to an end. An appeal in this Court is not a trial de novo but appellant and his counsel are limited to the objections addressed to the question in the trial court.

Appellant has further contended the court erred in admitting into evidence State's Exhibit 6, which was an accounting tape made by the witness Van Wert Mullin, and purported to be the record furnished Tuffy Mitchell of payoffs to appellant and other policemen.

Appellant argues the exhibit was objectionable as hearsay since it was not made in the presence of the appellant, while the State contends it was admissible within the shop-book exception to hearsay rule.

For documents to be admissible as business records within such exception, certain specific requirements must be met, viz: the entrant must make the entries within a reasonable time after the transaction, in the regular course of his business duty, have personal knowledge of the facts, and the record must be original. *State, ex rel.,* v. *Central States Bridge Co.* (1912), 49 Ind. App. 544, 549, 97 N. E. 803, 805; *Marks* v. *Box* (1913), 54 Ind. App. 487, 500, 103 N. E. 27, 32.

We prefer not to allude to the expression "res gestae" (found in some of the earlier decisions) in considering whether a business record is admissible under an exception to the hearsay rule. Such expression has become so spuriously enlarged in this area from the original "spontaneous exclamation" meaning originally attributed to it that any refer-

ence to it in determining the admissibility of business records is practically meaningless.[2]

Testimony in the record from Van Wert Mullin is to the effect that he gave Tuffy Mitchell an accounting tape of the bribe payments every fourth Saturday over a period of three or four years prior to and including May of 1963. Mullin further testified he made such an accounting and presented Mitchell with such a tape on June 1, 1963, which was the Saturday immediately following May 29, 1963, the day of the bribe payment in question. He further testified State's Exhibit 6 was the same accounting tape he presented to Mitchell on June 1, 1963. It thus was established the exhibit was nearly contemporaneous with and arising out of the transaction in question.

It is important that such evidence exclude the possibility of design or deliberation with respect to the exhibit. Had Mullin, a convicted felon, simply arrived in court with the exhibit on his person and presented it to corroborate his testimony, it

---

2. Professor Wigmore speaks of the general confusion of res gestae in this area as follows (6 Wigmore, Evidence, § 1757, p. 167 (3d ed. 1940):

"* * * Thus the phrase 'part of the "res gestae" ' came to be the shibboleth for admitting anything in the shape of words which could not be brought under one of the standard exceptions to the Hearsay rule. This loose usage was materially assisted, if not originally propagated, by a paragraph of Professor Greenleaf's (as well as by his indiscriminate use of "res gestae" for sundry kinds of hearsay evidence):

"1842, Professor Simon Greenleaf, Evidence, § 108: 'There are other declarations which are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation. The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others; and each, during its existence, has its inseparable attributes and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the "res gestae," may always be shown to the jury along with the principal fact, and their admissibility is determined by the judge according to the degree of their relation to that fact, and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description.'

"This passage, and the structure of decisions resting on it, have no basis of principle. * * * "

obviously would have added nothing to such testimony. However, here it appeared the U. S. Internal Revenue Agent, Richard Bushman, testified he took the exhibit from Tuffy Mitchell's wallet while searching Mitchell pursuant to an arrest made on June 2, 1963, which was the day after Mullin had routinely turned the tape over to Mitchell. It thus appears that the witness Mullin had no opportunity to fabricate the exhibit unless he did so prior to Tuffy Mitchell's arrest. Any theory that Mullin and Mitchell anticipated or planned for their own arrest would be utterly ridiculous.

The exhibit meets all the foregoing requirements to establish its veracity as a shop-book entry entitling it to be admitted as an exception to the hearsay rule. Appellant's contention the trial court erred in asking the witness certain questions relating to State's Exhibit 6 is waived by the failure of appellant or his counsel to object to such questions in the court below.

Similarly appellant's contention the court erred in permitting the witness to answer a question as to whether "appellant could have made any arrests" for the reason it called for a conclusion of the witness was waived by the failure to make such objection in the trial court.

Also, appellant's contentions as to the overruling of his objections to further questions asked of the witness Van Wert Mullin are waived in view of the failure of appellant to set out in his motion for new trial any answers given by the witness to such questions, in substance or otherwise.

See: *Jay* v. *State* (1965), supra, and cases heretofore cited.

Judgment affirmed.

Myers, Achor and Arterburn, JJ., concur. Jackson, J., not participating.

NOTE.—Reported in 210 N. E. 2d 249.