ELLIS *v.* STATE OF INDIANA.

[No. 169S2. Filed September 3, 1969. No petition for rehearing filed.]

*John G. Bunner*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *William F. Thompson*, Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged by affidavit with the crime of second degree arson. After a trial by the court,

the appellant was found guilty and judgment rendered accordingly.

Appellant's sole assignment of error is that the trial court erred in overruling his motion for new trial. The two grounds given in the motion for new trial are that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law.

The evidence in the case showed that Audrey Nance, who lives across the street from McClure's Memorial Baptist Church, was in bed listening to the radio at approximately one a.m. when she heard a window break. She got out of bed and looked out the front door. She saw a man on a ladder going into the church. The ladder broke and the man jumped down. He then replaced the ladder against the church and climbed in. Mrs. Nance testified that she was able to hear the man's feet hit the floor when he jumped down from the window. Mrs. Nance informed her next door neighbor, Mrs. Thomas, as to what she had observed. As she returned from her neighbor's home, she saw "a light of some kind" flashing on the front doors of the church. At the same time she saw the man unlock the front door of the church and get into his car. Very shortly thereafter she observed smoke coming from the church. A fire in the church was soon visible, which caused extensive damage.

Mrs. Nance testified that the car the man used was a light blue Falcon. The man got into the car and drove back and forth in front of the church. On his third trip Mrs. Nance wrote down the license number of the car. Although Mrs. Nance could not see the man's face, she testified that the man was wearing a dark suit, white shirt, and a tie.

Audrey Nance testified in the trial court as to what she had observed. Her testimony was corroborated by her neighbor, Mrs. Thomas.

After the policemen and firemen had arrived at the scene, the appellant was seen near the church. He so interfered

with the duties of the firemen and policemen that he was repeatedly asked to leave. While appellant was watching the fire someone made a remark about the appellant's presence. Appellant reacted to this remark by jumping in his car, backing up rapidly, turning the car around, and quickly driving off. Witnesses testified that he squealed his tires and burned rubber during his departure.

Appellant was apprehended by police officers who had received a dispatch to look for a light blue Falcon bearing a Kentucky license plate, number 575 796. He was then returned to the scene of the fire where Audrey Nance identified his clothing as the same she had seen previously. His car was identified by two witnesses as the same vehicle that had been seen earlier.

A fire inspector for the Evansville Fire Department investigated the building immediately after the fire was extinguished and as a result of such inspection testified that the fire had started at three different locations on two floors of the church:

"Q. Were you able to determine where the fire started?

"A. Three different locations.

"Q. And would you describe these locations?

"A. Yes, sir, one was to the left of the door in the basement in a cloak room, the second was on the first floor to the left in a closet, and the third location was in the, I don't know exactly how to describe it, on the table in the basement."

To rebut this evidence appellant filed a notice of alibi which stated that he was at the American Legion Home between midnight and 2:00 a.m. on the 19th day of May, 1968. However, the manager of the American Legion testi-

fied that he did not recall seeing the appellant during those hours.

Appellant alleges that although the evidence is undisputed that he was at the scene of the fire, there is no evidence to show that appellant actually set the fire. The appellant admits that the identification need not always be positive and direct, but contends that it must be of such a substantial nature that the trier of the fact has in his mind no reasonable doubt and there can be no reasonable hypothesis other than the guilt of the defendant.

We agree with appellant that the identification must be of such a substantial nature as to remove any reasonable doubt. This identification satisfies that criteria. It has long been the rule in this state that an identification may be established by circumstantial evidence. *Craig v. State* (1908), 171 Ind. 317, 86 N. E. 397; *Mason v. State* (1963), 244 Ind. 206, 191 N. E. 2d 705.

The evidence presented in the trial court is uncontradicted. An eyewitness saw a man dressed like the appellant depart through the front door of the church shortly before the fire. The man got into a blue Falcon with Kentucky license plates, which car and license number were found to belong to the appellant. Further testimony in the trial court revealed that the appellant admitted that the car was in his possession the entire evening of May 18 and early morning of May 19 and that no one else could have driven it.

"Q. And did you drive it the entire evening, was it in your possession the entire evening of May 18, and early morning of May 19?

"A. Yes.

"Q. And no one else could have driven it?

"A. I wouldn't think so."

The above evidence, while circumstantial, is sufficient to support the conviction.

". . . The question of identity is one of fact and not of law. Therefore all evidence bearing upon the question must be submitted to the jury, and it is for the jury to determine whether it is satisfactory and trustworthy. (Citing cases). The evidence was pertinent to the issue of identification and was properly admitted. *Its weight was for the jury to determine*" (our emphasis). *Medsker v. State* (1946), 224 Ind. 587, 590, 70 N. E. 2d 182.

The appellant next argues that the state failed to prove the corpus delicti of the crime of arson. The crime of arson consists of two elements: the burning of the property in question and a criminal agency as a cause of that burning. 5 *Am. Jur. 2d Arson and Related Offenses*, § 46, p. 836. While the appellant would admit the fact that the church burned, he claims that there was no evidence that the fire resulted from any criminal agency that could be traced to him.

The rule in Indiana is that the state has the burden of showing the fire was from other than accidental causes, and absent this showing the fire will be presumed to be accidental. The law implies that the fire accidentally resulted from some providential cause, rather than from a criminal cause, unless the evidence proves otherwise. *Simmons v. State* (1955), 234 Ind. 489, 129 N. E. 2d 121; *Williams v. State* (1930), 90 Ind. App. 667, 169 N. E. 698.

The corpus delicti and the criminal agency of the defendant may be proved by circumstantial evidence. 5 *Am. Jur. 2d, Arson and Related Offenses*, § 47, p. 838. The evidence presented in the trial court showed that a man dressed like the appellant broke into the church at approximately 1:30 a.m., left the church and entered the appellant's car and lingered in the vicinity of the fire. A very short time lapsed between the man's depar-

ture from the church and the discovery of the fire. The fire inspector testified that the fire started at three locations on two different floors. All of the evidence taken together supports the trial court's conclusion that the fire was of an incendiary origin.

In the present case the fire inspector for the Evansville Fire Department did not testify as to his opinion of how the fire started. This follows the general rule, which Indiana subscribes to, that prohibits expert witnesses from testifying as to ultimate facts in cases involving arson.

> ". . . It would seem, however, that in the case of the origin of a fire, if the expert is permitted to testify to the primary facts, the conclusions can be drawn by the jury, and hence the expert should not be permitted to give his opinion of the ultimate fact. This view is sustained by all of the authorities which have come to our attention." *Beneks v. State* (1935), 208 Ind. 317, 325, 196 N. E. 73, 76.

It would be a rare instance where there would be direct evidence of the actual lighting of a fire by an arsonist. In most cases it is circumstantial. Here there is no direct evidence that any one actually saw the appellant light the fire. However, it has long been the law in Indiana that a criminal conviction can rest entirely upon circumstantial evidence if there is substantial evidence of probative value to support an inference of guilt. *Schooler v. State* (1966), 247 Ind. 624, 218 N. E. 2d 135; *Herman v. State* (1965), 247 Ind. 7, 210 N. E. 2d 249, cert. den. 384 U. S. 918, 86 S. Ct. 1364, 16 L. Ed. 2d 439; *Wagner v. State* (1963), 243 Ind. 570, 188 N. E. 2d 914.

The evidence being sufficient to support the decision of the trial court, the judgment is affirmed.

Hunter and Givan, JJ., concur; Jackson, J., concurs in result; DeBruler, C. J., dissents with opinion.

### DISSENTING OPINION

DeBruler, C. J.—I dissent from the majority opinion in this case and would grant the appellant a new trial. The majority is in error in my opinion when they conclude that there was circumstantial evidence presented to the trier of fact in this case from which the trier of fact could find that the fire was of incendiary origin. In my opinion there is no evidence either circumstantial or direct which would permit this inference. There must be some proof either direct or circumstantial presented at the trial to support the element of this offense that the fire was set deliberately by some person. *Simmons v. State* (1955), 234 Ind. 489, 129 N. E. 2d 121.

The following evidence outlined in the majority opinion was deemed by the majority to be sufficient to support this element:

"The evidence presented in the trial court showed that a man dressed like the appellant broke into the church at approximately 1:30 a.m., left the church and entered the appellant's car and lingered in the vicinity of the fire. A very short time lapsed between the man's departure from the church and the discovery of the fire. The fire inspector testified that the fire started at three locations on two different floors."

The appellant aptly cites several cases which demonstrate the proper methods by which the incendiary origin of a fire may be proved. In *Smock v. State* (1966), 247 Ind. 184, 213 N. E. 2d 896, the outline of the evidence contained the following:

"There was testimony from the chief director of the Indianapolis Fire Bureau that in his opinion both fires were deliberately set by a human being."

In the case for decision before us the State's expert witness, a fire inspector, only testified that the fires started in the church in three different locations. However, there is no

evidence of how they were started, what the three locations were, what type of materials were involved, or that the fires were not naturally caused. The fire inspector did not testify as to the significance of the one fact he did relate nor did he state that in his opinion this fire was set by a human being. The following case analyses appear in appellant's brief indicating the type of evidence that would be relevant:

"In *State v. Marchand*, 31 N. J. 223, 156 A. 2d 245, pieces of burnt towel found at the scene of the fire and saturated with lighter fluid were sufficient to prove that the fire was of incendiary origin.

"In *State v. Ruckman*, 253 Mo. 487, 161 S. W. 705, testimony that there was the odor of coal oil in the burning premises and that kindling was arranged around a pool table, was evidence to show that the fire was caused criminally rather than by accidental or natural means.

"In *State v. Watson*, 47 Oregon 543, 85 P. 336, a coal oil can, burlap sacks and excelsior saturated with oil tended to show the origin of the fire."

I, therefore, conclude that there is a total lack of evidence in this case to support the court's determination that this fire was of incendiary origin.

NOTE.—Reported in 250 N. E. 2d 364.