Ronald Jeffrey HARRIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 64S00–9110–CR–861.

Supreme Court of Indiana.

July 22, 1993.

Rehearing Denied Oct. 8, 1993.

John E. Martin, Law Offices of James V. Tsoutsouris, Valparaiso, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A trial by jury resulted in the conviction of appellant of Felony Murder, Aiding and Inducing or Causing Murder, a Class A felony, and Assisting a Criminal, a Class C felony. The trial court sentenced appellant to an enhanced eight (8) year term for assisting a criminal. The court merged the charge of aiding and inducing or causing murder into the murder conviction. He gave the maximum sentence on the murder conviction of sixty (60) years.

The facts are: Portage police Sergeant Osberg found filling station attendant Harchand Dahliwahl dead in the Hudson Oil gas station in Portage. Dahliwahl had suffered a massive head wound determined to have been caused by a blast from a shotgun. Approximately $327 was missing from the station. During their investigation, police learned that Chris Peterson was involved in the robbery and killing. Police obtained a search warrant and recovered a sawed-off shotgun in Peterson's automobile.

Following Peterson's arrest, his girlfriend, Marpessa Chase, informed police that Ronald Harris, appellant in this case, was a friend of Peterson. Police then interviewed appellant on two separate occasions. Harris denied having anything to do with the shooting. He also denied the shootings in a taped telephone conversation with Chase. During an interview with FBI agents, appellant told them that he and Peterson "were driving around drinking and snorting cocaine when Peterson went in and shot a man."

Following approximately six hours of interrogation, appellant made a statement to the officers wherein he acknowledged that he had known Peterson for many years and that following Peterson's service in the Marine Corps and his return home they renewed their friendship. He stated he knew that Peterson possessed a sawed-off shotgun and that he carried it with him.

Just prior to the killing, they were driving around using cocaine, marijuana and drinking beer and Peterson became very angry because another driver cut him off in traffic. Shortly thereafter, while Peterson was still quite angry, they stopped at the filling station and Peterson entered and shot the attendant.

Appellant claimed that after the shooting Peterson returned to the vehicle and that he yelled at him and asked him why he had done such a thing. Appellant claimed he told Peterson he wanted nothing to do with the money Peterson obtained in the robbery and that he became frightened of Peterson fearing that he might kill him.

The police then investigated a very similar shooting which had occurred in Cedar Lake, Indiana. Appellant admitted being with Peterson on the night of the Cedar Lake shooting and then made a statement that he and Peterson had been driving around in Peterson's car and went to Cedar Lake. He said Peterson stated he wanted to buy some "Tops" rolling papers and parked in a dark area near a filling station in Cedar Lake.

Appellant claims he remained in the automobile. Peterson took the shotgun and entered the station. Thereafter appellant stated that he heard a loud noise like an automobile backfire. Shortly thereafter Peterson returned to the vehicle, placed the shotgun in the back seat, and covered it with his coat or a small blanket. He was carrying a dark colored purse which he handed to appellant. Various items from the purse and the purse itself were thrown from the car as they proceeded down the road and later were recovered.

In his statement, appellant acknowledged that since the shooting in Cedar Lake he had changed his physical appearance in that he had grown a moustache and a short

beard. In addition, he cut his hair. He stated that on the night of the shooting his hair was at least collar length and described it as stringy in appearance.

After giving the second statement to the police, Harris was arrested for the Hudson Oil station shooting. During his statements and at trial, appellant claimed he merely accompanied Peterson and did not participate in the robberies or the shootings. Evidence concerning the Cedar Lake shooting was presented at the trial. Carrie Jillson testified that she and Rhonda Hammersley (the person killed at the Cedar Lake robbery) were working from 2:30 to 10:30 p.m. at the Petro Mart gas station in Cedar Lake. As they were closing the station, they noticed a two-door car drive by slowly and the occupants looked at them. Approximately three to five minutes later, a man ran from behind the car and shot Hammersley in the head with a shotgun. Jillson testified that the gun then was placed against the back of her head but she heard someone say, "All right, that's enough. Let's go."

After the assailants left, she summoned police officers. Jillson aided police officer Carl Grimmer in making a composite drawing of one of the assailants. During this drawing, she described the person as having dark eyes, dark hair, Hispanic eyebrows, wide cheek bones and a long chin. However, she stated she believed the subject to be white, whereas appellant is a light-skinned black man.

Michael Lynn testified that he was incarcerated with appellant. During that time, appellant told Lynn that Peterson was his best friend, that they had been going out doing robberies and doing drugs and that they were shooting people during the robberies with a .12 gauge shotgun. He stated that he was nervous about this activity and that Peterson told him he could change his appearance with his haircut and his moustache. Appellant told Lynn specifics concerning the robbery at the Hudson Oil station and also stated that he had been involved in the Cedar Lake shooting although he claimed that Peterson was the triggerman.

■ Appellant claims the trial court erred in admitting evidence of the Cedar Lake robbery and murder. Appellant cites *Gibbs v. State* (1989), Ind., 538 N.E.2d 937 and *Williams v. State* (1986), Ind., 489 N.E.2d 53, for the proposition that evidence of extrinsic offenses ordinarily is not admissible in the prosecution of a subsequent crime. It is true that both of these cases make that statement of the law. However, in both cases, the convictions were affirmed. This Court held in *Gibbs* that the extrinsic offenses were admissible in four of the charged counts to show Gibbs's identity. *Williams* held that the evidence was admissible on the issue of identification.

In the case at bar, in both his statements to the police and his testimony at trial, appellant takes the position that although he was present at the Hudson Oil robbery and murder he did not know it was going to take place, he did not aid Peterson in any way and that he was surprised when Peterson entered the station and shot the attendant. Appellant thus raised the issue in the case as to his state of mind and his intent before, during, and after the robbery.

In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, this Court adopted in its entirety Federal Rule of Evidence 404(b), which is consistent with our prior holdings concerning the exceptions to the inadmissibility of prior crimes. Operating under this rule, the federal court in *United States v. Nolan* (7th Cir.1990), 910 F.2d 1553, *cert. denied*, —— U.S. ——, 111 S.Ct. 1402, 113 L.Ed.2d 457, held it was proper to show prior uncharged crimes to establish a defendant's intent and knowledge when he committed the charged crime. Such is the situation in the case at bar. The main fact for determination by the jury was the intent and knowledge of appellant at the time the Hudson Oil robbery took place—that is, whether he was intentionally participating in the robbery with Peterson, and his knowledge as to Peterson's intentions and probable conduct during the robbery. The trial court did not err in admitting evidence of the Cedar Lake robbery.

Appellant contends the trial court erred in overruling his objection to the prosecuting attorney's statement, "If they had witnesses that would lead you to believe he [defendant] wasn't at Cedar Lake, that ain't my job to bring them in." Appellant claims this is an unfair comment on his lack of presentation of evidence and would tend to inform the jury that he had the burden of proof when in fact it lay with the State.

Appellant had filed an alibi notice pursuant to Ind.Code § 35–36–4–1. An alibi is an affirmative defense which of course must be invoked by a defendant. We have held that once invoked the State has the burden of proving that the defendant in fact was at the scene of the crime and committed the offense. However, we have held that although the State has this burden, it need not directly rebut appellant's alibi evidence but may sustain its burden of proof by its evidence-in-chief concerning the commission of the crime. *Clark v. State* (1982), Ind., 431 N.E.2d 112.

During his closing argument, appellant's counsel had stated:

"[A]nd what's more, and this is elicited and this is a fact, we gave the State the names and the addresses and the phone numbers if we had them, of the people that were there that could corroborate that[.] I don't have to be [sic] bring the evidence in this courtroom, they do...."

Appellant thus was trying to convince the jury that it was the State's burden to bring forth his alibi witnesses whose names and addresses he had furnished to the State. This, of course, is not true.

Although the State has the burden of showing that appellant in fact was present at the scene of the crime, it certainly has no burden to present appellant's alibi witnesses. When seen in this context, it is readily apparent that the prosecutor's statement was in answer to defense counsel's statement and was entirely proper. *See Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1126.

Appellant claims there is insufficient evidence to show that he knowingly or intentionally killed another human be-

ing. Appellant is correct in his observation that mere presence at the scene of the crime is not sufficient to prove his participation. *Menefee v. State* (1987), Ind., 514 N.E.2d 1057. However, we have held that presence at the scene, together with evidence as to a defendant's conduct before, during and after the crime which tends to show complicity, can support an inference of participation in the crime. *Harris v. State* (1981), Ind., 425 N.E.2d 154; *Hudak v. State* (1983), Ind.App., 446 N.E.2d 615. From the evidence as set out above, it is apparent there was sufficient evidence before the jury to support a finding that appellant and Peterson had embarked on a joint enterprise of robbery and murder.

This evidence was sufficient to support the verdict. The jury was entitled to believe or disbelieve the evidence presented by the State and the appellant. *Roberson v. State* (1982), Ind., 430 N.E.2d 1173. There is sufficient evidence in this case to support the verdict of the jury.

Appellant contends the court erred in sentencing him on both assisting a criminal and the felony-murder charge. We hold that appellant is correct in this observation. It is entirely possible for a person to be guilty of assisting a criminal under circumstances which are not inherently included in the offense of murder. *See Reynolds v. State* (1984), Ind., 460 N.E.2d 506. In a case such as the one at bar where the aiding of a confederate is an integral part of the commission of the crime, the aiding should not be considered as a separate offense. *Smith v. State* (1982), Ind., 429 N.E.2d 956.

The State argues that a separate offense was committed by appellant when after he was confronted by the police he lied concerning his participation and Peterson's participation. The State reasons he thus was attempting to aid Peterson. We cannot agree with the State's position in this regard. Although many criminals will involve their confederate when they are questioned by police, they certainly are not required to do so and their failure to in-

volve a confederate cannot be considered to be a separate crime of aiding a criminal. This case therefore will be remanded to the trial court to merge the convictions of felony murder and assisting a criminal.

Appellant contends the trial court erred in sentencing him to the maximum penalty for the felony murder. He points out that under Ind.Code § 35–50–2–3 the presumptive sentence for murder is forty (40) years and that it may be enhanced only for stated aggravating circumstances. He concedes that the sentencing court need list only one aggravating factor to sustain an enhanced sentence. *Reaves v. State* (1992), Ind., 586 N.E.2d 847. He claims, however, that in the case at bar the trial court failed to disclose the factors that influenced his decision to enhance the sentence.

He further claims the court failed to identify any significant mitigating circumstances and that the court improperly considered appellant's prior juvenile record as an aggravating factor. However, the record discloses that the trial court found as aggravators the nature of the crime itself, the shotgun murders of innocent persons, defendant's prior juvenile record, and the trauma and shock to the community by reason of the nature of the crime.

Appellant contends that the court erred in using his juvenile record, citing *Day v. State* (1990), Ind., 560 N.E.2d 641. However, in that case, the court merely referred to the juvenile record without giving any specifics. We observed that:

> While it is possible that the sentencing judge knew about these juvenile offenses because he presided over them, the presentence report and the rest of the record before the trial court neither revealed any facts about the events constituting Day's juvenile history nor demonstrated any adjudications." *Id.* at 643.

In so holding, this Court acknowledged the existence of *Evans v. State* (1986), Ind., 497 N.E.2d 919 and its citation of *Simms v. State* (1981), Ind.App., 421 N.E.2d 698, but pointed out in those cases the presentence report contained specifics as to the juvenile record and that those specifics adequately supported evidence of a criminal history which could constitute aggravating circumstances.

In the case at bar, the presentence report details the history of appellant's criminal activity as a juvenile and gives the adjudications that support the finding of a specific juvenile history. The statement by the trial court that the crime was of a heinous enough nature to constitute an aggravating factor is sufficient to support the enhanced sentence.

This cause is remanded to the trial court for the purpose of merging appellant's conviction for assisting a criminal into his felony-murder conviction and to resentence appellant accordingly.

In all other respects, the trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., concurs in result.

DICKSON, J., dissents.