Jennifer JOSEPH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 27A02–9505–CR–266.

Court of Appeals of Indiana.

Jan. 5, 1996.

Transfer Denied March 12, 1996.

Bruce N. Elliott, Marion, for Appellant.

Pamela Carter, Attorney Gen., Randi F. Elfenbaum, Deputy Attorney Gen., Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jennifer Joseph appeals from her convictions for aiding a theft, a class D felony, and assisting a criminal, a class D felony.

We reverse and remand.

### ISSUE [1]

Whether the evidence is sufficient to sustain Joseph's conviction for assisting a criminal.

---

1. Joseph also claims that, for a variety of reasons, her sentences are manifestly unreasonable.

## FACTS

The evidence most favorable to the verdict reveals that Joseph, who was living with her father, dated Dondi Springer. Springer was friendly with James Hogue. Both Springer and Hogue had been to Joseph's house on several occasions where Joseph discussed the possibility of getting into her father's safe, which he kept in his bedroom, for the purpose of taking the money Joseph believed to be secured within. The trio had even attempted to gain access to the contents of the safe on at least one occasion using some numbers written on a small piece of paper Joseph's father kept hidden. Their effort was unsuccessful.

On the evening of March 13, 1994, Joseph picked up Springer and Hogue in her truck and the three, essentially, passed the night driving around. During this time, Joseph again mentioned her father's safe. She claimed a portion of the money kept therein belonged to her and that if Springer and Hogue would steal the safe, she would give them a cut of the money. At approximately 5:00 a.m. on the morning of March 14, 1994, the group drove to Springer's house. There, Joseph gave Springer and Hogue the keys to her truck and house and, assuring them that it would not be burglary since they had her keys, asked them to get her father's safe. Thereafter, Springer and Hogue left Joseph sleeping in Springer's bedroom and went to Joseph's house.

Once at Joseph's house, Springer and Hogue entered through the front door and removed the safe from her father's bedroom. The duo placed the safe in Joseph's truck, drove back to Springer's house, awakened Joseph, and told her they had the safe. Springer and Hogue opened the safe with a hammer and, after having failed to find money within, took the safe to an abandoned house and burned the papers they found in the safe.

Thereafter, Joseph returned to her house at approximately 7:00 a.m. and telephoned her father at work, claiming the house had been broken into and that the safe was missing. Acting at the direction of her father,

Joseph telephoned police and reported the incident. In the first story Joseph gave to investigating officers, she claimed to have spent the previous night at a girlfriend's house and claimed that a pager found in her living room belonged to her boyfriend, "Danny Hodge." When the police left, Joseph drove to Springer's house, returned the pager and told Springer and Hogue that the police were fingerprinting the house and that they should get rid of anything which may implicate them in the crime.

Later, Joseph told police Springer and Hogue may have taken her truck while she slept at Springer's house. Joseph indicated that she found scratches on the bed of her truck which she indicated may have been caused by the safe. Police executed a search warrant at Springer's house, where they discovered concrete dust and fresh gouge marks on the garage floor. They also found partially burned papers which had formerly been kept in the safe. Springer and Hogue told the police where to find the safe and implicated Joseph in the crime.

Springer and Hogue pleaded guilty to the theft of the safe. A jury found Joseph guilty of aiding a theft and assisting a criminal. The trial court sentenced Joseph to one and one half years in jail upon each count with the sentences to be served concurrently. Additionally, the trial court suspended one year of the sentence for each count and ordered Joseph to serve 180 days in the Grant County jail on alternating weekends in forty-eight hour periods.

## DECISION

Joseph was charged and convicted of aiding a theft, pursuant to Ind.Code 35–43–4–2(a) and Ind.Code 35–41–2–4, and with assisting a criminal, pursuant to Ind.Code 35–44–3–2. Joseph claims that in light of the evidence supporting her conviction for aiding a theft, the evidence is insufficient to sustain her conviction for assisting a criminal.

I.C. 35–43–4–2(a) provides in pertinent part:

However, because we reverse her conviction for assisting a criminal and remand the case to the trial court for re-sentencing, we need not address this issue.

A person who knowingly or intentionally exerts unauthorized control over property of another person with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

I.C. 35–41–2–4 provides in pertinent part:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. . . .

I.C. 35–44–3–2 provides in pertinent part:

A person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals or otherwise assists the person commits assisting a criminal, a Class A misdemeanor. However, the offense is:

(1) a Class D felony if the person has committed a Class B, class C. or Class D felony. . . .

■ Joseph argues "I.C. 35–44–3–2 was never intended to cover the fact situation presented herein." Brief of Appellant at 13. Specifically, she contends "the fact that following the theft an attempt was made to conceal the participants['] involvement, does not constitute a separate offense of assisting a criminal." Brief of Appellant at 15. In support of her contention, she directs our attention to *Smith v. State* (1982), Ind., 429 N.E.2d 956, and *Harris v. State* (1993), Ind., 617 N.E.2d 912, *reh'g denied.*

In *Smith,* the facts indicate Smith and Benson decided to rob a filling station. They proceeded to the filling station after assembling and test firing a gun. After the attendant had filled the gas tank, Benson followed him into the station and fatally shot him. Benson testified that Smith brought up the idea of robbing the filling station and gave parts of the gun to Benson for assembly. Benson also testified Smith was aware the gun was in the car and reminded him to take the gun when he followed the attendant into the station. Smith reasoned it was best Benson had killed the attendant since he would have been able to identify the duo. The following day, Smith aided Benson in changing the car's license plates as well as in painting the car. Smith and Benson admitted to their friend, Debra, that they had committed the crime. Smith told her he had crouched down in the front seat of the car with a knife when another customer pulled into the filling station. Additionally, he told her that killing the attendant was fine because, that way, no one could identify the pair. Later Smith requested that Debra obtain for him a newspaper clipping concerning the crime.

■ Smith was convicted of murder, robbery, and assisting a criminal. On appeal, he claimed the evidence was insufficient to support the three convictions. In response, our supreme court held:

Although the jury in the case at bar convicted appellant of murder, robbery, and assisting a criminal, the crime described in the statute I.C. 35–44–3–2 [assisting a criminal] was obviously intended to cover the situation where a person did not actively participate in the crime itself, but after the commission of the crime, aided the criminal.

\* \* \* \* \* \*

In the case at bar, the appellant and his co-participant could not have carried out their common plan of robbery and the resulting murder without giving aid and assistance to each other in such accomplishment. The fact that following the accomplishment of the robbery and murder they attempted to conceal their crime by painting the automobile and changing the license plates was merely a continuation of their common scheme and plan, under the circumstances did not constitute a separate offense. We, therefore, hold the charge of assisting a criminal merged with the convictions of murder and robbery.

*Smith, supra* at 959.

In *Harris* a filling station attendant was killed from a shotgun blast to the head. During the course of the investigation, police learned Peterson was involved in the crime. Following Peterson's arrest, his girlfriend implicated Harris, who denied participation in the shooting. However, he did concede that just prior to the killing, he and Peterson

were driving around using cocaine and marijuana and drinking beer and that when another driver cut Peterson off, he became very angry. When the duo stopped at a filling station, Peterson shot the attendant. Harris claimed he yelled at Peterson and asked him why he had killed the attendant. He further claimed he told Peterson he wanted nothing to do with the money Peterson obtained in the robbery and that he became afraid of Peterson. While he was incarcerated, Harris told another inmate that he and his best friend Peterson had been committing robberies and doing drugs and that they shot people during these activities. He told the inmate he had been nervous about these activities and that Peterson had instructed him to cut his hair and grow a moustache, which he did in an effort to change his appearance. Harris was charged with and convicted of felony murder, aiding and inducing or causing a murder, and assisting a criminal. The trial court merged the aiding and inducing or causing a murder charge with the felony murder conviction.

 On appeal, Harris claimed the trial court erred in sentencing him for both assisting a criminal and the felony murder. Citing *Smith, supra* our supreme court held:

In a case such as the one at bar where the aiding of a confederate is an integral part of the commission of the crime, aiding should not be considered as a separate offense.

The State argues that a separate offense was committed by appellant when after he was confronted by the police he lied concerning his participation and Peterson's participation. The State reasons he thus was attempting to aid Peterson. We cannot agree with the State's position in this regard. Although many criminals will involve their confederate when they are questioned by police, they certainly are not required to do so and their failure to involve a confederate cannot be considered to be a separate crime of aiding [assisting] a criminal.

*Harris, supra* at 916.

Here, the State claims that because Joseph "did not actively participate in the theft ... her conduct after the theft clearly constituted affirmative acts designed to aid [Springer] and [Hogue] in escaping arrest, capture and punishment," Brief of Appellee at 7. In light of our supreme court's holdings in *Smith* and *Harris,* we cannot agree with the State's proposition.

 The facts here clearly reveal that Joseph's acts of aiding the theft of her father's safe made her an active participant in the crime, despite the fact she did not go to the house and physically steal the safe. The removal of the safe from her father's house was, after all, her idea, and she provided the means by which her own recruits accomplished the task. That is, she provided Springer and Hogue with the keys to her truck and house, and she furnished them with her truck to facilitate the theft of her father's safe. As a result, Joseph, as an active participant, would, at best, have found herself in a precarious position should the plot have been revealed. Therefore, the fact that Joseph assisted Springer and Hogue in evading police *after* they took the safe is nothing more than an example of her lying in an attempt to hide her involvement in the crime and to distance herself from the situation.

As such, the facts are insufficient to show Joseph committed the separate and distinct offense of assisting a criminal *after* the commission of the theft itself. Rather, the facts that she lied to the police concerning Springer and Hogue's involvement, that she warned them of the police investigation, and that she advised them to dispose of anything that might implicate them in the crime merely reveal Joseph's attempt to hide her continuing involvement in an illicit plan to steal her father's safe—and to get away with doing so. Indeed, it would be naive to assume that one who actively participates in a crime would not also attempt to evade punishment therefor by thwarting police investigatory efforts after the fact.

 Here, Joseph was charged and convicted as an accomplice pursuant to I.C. 35–43–4–2(a) (theft) and I.C. 35–41–2–4 (aiding a crime) for aiding Springer and Hogue commit the crime of theft. An accomplice is equally guilty as a principal. *Matter of J.L.*

(1992), Ind.App., 599 N.E.2d 208, 211, *trans. denied*. Furthermore, when reviewing the sufficiency of the evidence for aiding a crime, this court has held it is proper to consider a defendant's conduct before, during and *after* the crime. *Id.* at 212 (emphasis added). See *Johnson v. State* (1992), Ind.App., 605 N.E.2d 762, *trans. denied* (evidence that defendant sought out someone to punch victim in the nose, obtained a weapon and gave it to one of the assailants, attempted to lure the victim from his room, returned to and readied the car, hid one of the weapons, and participated in discussions concerning the group's "story" was sufficient to permit the jury to infer that defendant knowingly aided, induced or caused a breaking and entering with the intent to commit felony intimidation, battery with a deadly weapon, battery resulting in serious bodily injury or murder). Thus, it is improper to focus on Joseph's actions, which were taken after the crime was committed, with the intent to charge her with and convict her of the separate crime of assisting a criminal when, in reality, those actions merely represented her continuing scheme or plan to aid Springer and Hogue in the theft of her father's safe.

Accordingly, we reverse Joseph's conviction for assisting a criminal, and remand for resentencing.

Reversed and remanded.

NAJAM, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The majority agrees there was sufficient evidence to support Joseph's conviction for Assisting a Criminal. Joseph argues the trial court erred in refusing to merge her conviction of Assisting a Criminal, a class D felony, with her conviction of Aiding a Theft, a class D felony. She cited *Harris v. State* (1993), Ind., 617 N.E.2d 912, *reh. den.* In that case, Harris was convicted of Murder and Assisting a Criminal. The Court held that Assisting a Criminal was a lesser included offense of the offense of Murder and that a defendant should not have been sentenced on both charges. *Id.* However, *Harris* does not ap-

ply to the present case, for Joseph was neither charged with, nor convicted of any greater offense. We addressed a situation in *Horn v. State* (1987), Ind.App., 503 N.E.2d 1235, which is more closely analogous to the present situation. In that case, Horn was convicted of Robbery as an Aider, a class B felony. Horn was charged with Robbery as an Aider. He requested an instruction on Assisting a Criminal and was denied because Assisting a Criminal was not a lesser included offense of Robbery as an Aider. The offense of Assisting a Criminal contained the element of intent to hinder the apprehension or punishment of a person who had committed a crime, while Robbery as an Aider required aiding, inducing or causing another to commit a robbery. *Id.* at 1236.

Likewise, Joseph's actions in aiding Springer and Hogue before the theft caused her to be charged with Aiding a Theft, as Horn was charged with Robbery as an Aider. Her actions after the theft caused her to be charged with Assisting a Criminal because, as we articulated in *Horn*, she intended to hinder the apprehension or punishment of Springer and Hogue. The two crimes arise from separate facts and circumstances. For example, had Joseph only committed the acts she committed after the safe was stolen, she could have been charged with Assisting a Criminal. Her acts after the safe was stolen were not a continuation of her acts prior to the theft of the safe. Her crime of Aiding a Theft ended when the safe was stolen. Although the majority believes it may be "naive to assume that one who actively participates in a crime would not also attempt to evade punishment therefor by thwarting police investigatory efforts after the fact," I believe there should be some inducement for a criminal not to further perpetuate criminal conduct and additional punishment for criminals who chose to commit additional crimes in an effort to prevent one who has behaved criminally from being discovered by police. Thus, the trial court correctly refused to merge Joseph's conviction of Assisting a Criminal, a class D felony, with her conviction of Aiding a Theft, a class D felony.