**Michael A. SANGSLAND,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 92A04–9803–CR–174.

Court of Appeals of Indiana.

Aug. 4, 1999.

Transfer Denied Oct. 15, 1999.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Michael Sangsland appeals his convictions by jury of burglary, a class B felony, and theft, a class D felony.

We affirm.

### ISSUES

I. Whether sufficient evidence exists to sustain Sangsland's convictions.

1. Hartman Road was formerly known as "13

II. Whether the trial court abused its discretion by permitting the State's undisclosed rebuttal witness to testify.

III. Whether reversal of Sangsland's convictions is required as a result of a *Brady* violation by the State.

### FACTS

On February 11, 1997, at approximately 5:00 p.m., Mr. Coffelt returned to his rural home located at 3759 East Hartman Road in Whitley County and discovered that his collection of guns and rifles, ammunition, and other items had been stolen. He then called the police and reported the burglary. When Deputy Charles Vogely arrived at the Coffelt residence, Mr. Coffelt indicated that he was last in the residence on February 9, 1997. The police subsequently received an anonymous tip that Sangsland had been selling guns. Upon further investigation, the police discovered that the guns being sold by Sangsland were Coffelt's guns. When police apprehended Sangsland, he still had some of Coffelt's guns in his possession.

The State subsequently charged Sangsland by information with burglary and theft, alleging that the crimes occurred on or about February 9. Sangsland filed a notice of alibi defense. In its answer to the notice of alibi, the State alleged that charged offenses occurred between February 9 and 11.

A trial by jury commenced on February 3, 1998. A.L., a juvenile, testified that he and Sangsland had stolen the guns and ammunition .from the Coffelt residence. Although A.L. could not remember the exact date of the burglary, he indicated that it took place sometime in February prior to Valentine's Day. Jarrod Adams, an acquaintance of Sangsland, testified that Sangsland approached him about selling the guns on February 13 or 14. Adams further testified that Sangsland told him that he and A.L. had taken the guns from a farmhouse. A.L.'s girlfriend testified that Sangsland admitted that he and A.L. had stolen guns from a house "on 13 Curves." [1]

Joseph Harter and Ryan Robbins each testified that they had purchased a gun from

Curves." (R. 258–59).

Sangsland which was identified at trial as belonging to Coffelt. Finally, the State introduced into evidence a letter written by Sangsland to A.L.'s girlfriend, wherein Sangsland complained that A.L. had "nar[k]ed" and requested that the girlfriend convince A.L. not to testify against him. (R. 365). Sangsland also requested that the girlfriend tell A.L. to tell the authorities that someone named Josh had committed the burglary, and that he had "nar[k]ed" on Sangsland because he was scared of Josh.

The defense proceeded along two theories. First, Sangsland's counsel attempted to show the alleged burglary occurred on or before February 5, 1997, prior to the period alleged in the State's answer to the notice of alibi. In support of this theory, Sangsland presented testimony from Candy Adair and Sangsland's mother, who each testified that they had learned through conversations with the Coffelts on February 5, 1997, that Mr. Coffelt's guns had been taken in a burglary.

Second, Sangsland advanced an alibi defense. Sangsland introduced the testimony of his parents in an attempt to show that he was incapable of committing the crimes alleged because he was on home detention in his parents' mobile home from January 13 through February 12, 1997. Sangsland's mother testified that during this time period, Sangsland was never outside the home without her knowledge, that she knew where he was "24 hours a day," and that he only went outside briefly to smoke cigarettes. (R. 533, 551). She indicated that Sangsland could not have exited the home without her knowledge because he did not have a key to the deadbolt lock on one door, and that the other door had a bar securing it which could not be moved without making noise. (R. 531). She also stated that Sangsland could not exit the home through any windows because plastic had been placed over them. Sangsland's father also testified that during the months of January and February 1997, Sangsland was at home during the hours when he was not at work.

The jury found Sangsland guilty of burglary and theft.

## DECISION

### I. *Sufficiency of the Evidence*

Sangsland argues that there is insufficient evidence to support his convictions because the State failed to prove beyond a reasonable doubt that the burglary occurred between February 9 and 11, 1997, as alleged in the State's answer to his notice of alibi. Specifically, Sangsland argues that while the State's evidence is adequate to support a conclusion that the elements of burglary and theft have been established, there is nevertheless insufficient evidence to permit a rational trier of fact to infer that he committed those crimes between February 9 and 11 as alleged in the State's answer to his notice of alibi.[2] Sangsland contends that once he "premised his defense upon the existence of an alibi and proof that the alleged crime could not have occurred upon the date charged, proof of the date of the burglary became a fact essential to conviction," which the State was obligated to prove beyond a reasonable doubt. Appellant's Brief, p. 12.

As Sangsland correctly notes, it is fundamental that the State has the burden of proving beyond a reasonable doubt each essential element of the crime charged. Time, however, is not an essential element of the crime of burglary or theft. *See* Ind.Code § 35–43–2–1; Ind.Code § 35–43–4–2; *Hammond v. State*, 240 Ind. 313, 164 N.E.2d 640 (1960). The law is well settled that where time is not an element or "of the essence of the offense," the State need not prove the precise date alleged in the indictment or information but may prove that the crime occurred at any time within the statutory period of limitations. *Quillen v. State*, 271 Ind. 251, 391 N.E.2d 817, 818–19 (1979); *Cf. Herman v. State*, 247 Ind. 7, 210 N.E.2d 249, 256 (1965) ("where time is not of the essence of the offense, under an allegation of a specific date, the offense may ordinarily be proved as having occurred at any date preceding the

---

2. Sangsland argues that no witness could state when the burglary actually occurred, and that Mr. Coffelt did not offer any testimony to establish when he had last seen the guns or knew them to be in his possession.

filing of the affidavit or indictment which is within the statute of limitations.").

■ Generally, variance between the date alleged and the State's proof at trial does not mandate acquittal or reversal. A variance between the date alleged in a charging information and the evidence at trial is not fatal unless it misleads the defendant in the preparation of his defense or when it subjects him to the likelihood of another prosecution for the same offense. *Downs v. State*, 656 N.E.2d 849, 852 (Ind.Ct.App.1995).

■ Nevertheless, Sangsland suggests that because he filed a notice of alibi, proof of the alleged time period became an essential element of the crimes charged. We disagree. Although our supreme court has stated that the filing of a notice of alibi defense makes the time of the offense critical or "of the essence," it has also made clear that the mere filing of an alibi defense does not impose a greater burden of proof on the State than would be otherwise required absent such a filing. *Jennings v. State*, 514 N.E.2d 836, 837 (Ind.1987). In *Quillen*, our supreme court stated that "although time becomes of the essence when the alibi statute has been invoked, it is also well settled that a variance, in order to be fatal, must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense." 391 N.E.2d at 819 (*citing Aikens v. State*, 154 Ind.App. 36, 289 N.E.2d 152 (1972)).

In *Stewart v. State*, 521 N.E.2d 675 (Ind. 1988), the defendant contended that the State's response to his notice of alibi, in which the prosecution alleged that the offense occurred on July 6, required the State to prove that the incident occurred on that date as an element of the offense. The defendant further contended that the invocation of the alibi statute added an essential element to the crime charged. In rejecting the

defendant's contentions, our supreme court stated that "[w]here the State at trial restricts its proof to the time frame within the information or within its answer to the notice of alibi, it has met its obligation under Ind. Code § 35-36-4-2," the Alibi Statute. *Id.* at 676-77. After concluding that the State had discharged its duty under the statute, the court stated that "[t]he time of commission was not an element of the offense." *Id.*

■ In light of the language in *Quillen* and *Stewart*, we conclude that the mere fact that a defendant raises an alibi defense does not necessarily make time an essential element of an offense.[3] However, where the State's answer to the notice of alibi and evidence points exclusively to a specific date, and the defendant presents a defense based on that date, the jury's consideration of the defendant's guilt should be restricted to that date. *See Jennings*, 514 N.E.2d at 837 (reversible error to instruct that State's proof need not establish particular date of charged offenses when alibi defense was asserted; instructions circumvented and nullified defendant's opportunity to assert his alibi defense).

■ Here, the State, in its answer to Sangsland's notice of alibi, asserted that the offenses occurred sometime between February 9 and 11, 1997. The State's evidence at trial was consistent with that answer although there was evidence that suggested that the crimes could have occurred as early as February 1. A.L. testified that he and Sangsland burglarized the Coffelt residence in February 1997, sometime before Valentine's Day. Mr. Coffelt testified that he called the sheriff on the same day he discovered that his guns were missing, and Deputy Vogely testified that he responded to the call on February 11. Thus, the State's evidence clearly established that the offenses occurred between February 1 and 11. Sangsland pre-

---

3. Other jurisdictions have reached this same conclusion. *See People v. Suter*, 292 Ill.App.3d 358, 226 Ill.Dec. 568, 685 N.E.2d 1023, 1029 (1997) ("The mere fact that defendant raises an alibi defense does not make time a material element of the offense."); *United States v. King*, 703 F.2d 119, 124 (5th Cir.) (time does not become a material element of the offense merely because an alibi defense is presented), *cert. denied*, 464 U.S. 837, 104 S.Ct. 127, 78 L.Ed.2d 123 (1983); *State v. Siems*, 535 S.W.2d 261, 266 (Mo.App. 1976); *State v. Jackson*, 221 Or. 315, 351 P.2d 439, 444 (1960) (defendant in a criminal proceeding cannot make time a material element by a defense of alibi).

sented an alibi defense and witness testimony accounting for his whereabout during this time frame. In fact, Sangsland presented an alibi defense for the period between January 13 and February 12. Sangsland's mother and father each testified that during this time period he was at their home on home detention. Accordingly, any variance in the time frame alleged and the State's proof at trial did not circumvent or nullify Sangsland's opportunity to assert his alibi defense to the jury.[4] Under these circumstances, we cannot say that time was "of the essence" or critical to the defense.

As set forth in FACTS, the State presented overwhelming evidence placing Sangsland at the scene of the crime and demonstrating that he had in fact committed the burglary and theft. The State needed to prove no more. *See Harris v. State*, 617 N.E.2d 912 (Ind.1993) (once an alibi defense is invoked, the State "has the burden of proving that the defendant in fact was at the scene of the crime and committed the offense."), *overruled in part on other grounds, Wright v. State*, 690 N.E.2d 1098, 1109 (Ind.1997).

## II. *Untimely Disclosure of Witness and Evidence*

Before the presentation of evidence, the State made a motion in limine seeking to exclude evidence of any other burglary at the Coffelt residence.[5] Sangsland's counsel did oppose the motion. However, as his second witness, Sangsland called his mother who testified that on February 5, 1997, Mrs. Coffelt told her that the Coffelt home had been burglarized and their guns and ammunition stolen. Sangsland presented this testimony to demonstrate that the burglary and theft occurred prior to February 9th date alleged in the charging information. At a recess following Mrs. Sangsland's testimony, the State sought permission to call Officer Frederick Dellinger as a rebuttal witness to demonstrate that the Coffelts were in fact burglarized on February 4, in an entirely

separate incident. Sangsland's counsel objected to Officer Dellinger's testimony on the grounds that the State had failed to timely disclose him as a witness. After the conclusion of Sangsland's presentation of evidence, the trial court permitted Officer Dellinger to testify for the limited purpose of establishing the fact "that there was another burglary and that could have created some confusion between the parties." (R. 556).

On appeal, Sangsland claims that the trial court deprived him of fundamental due process of law by permitting the State to rebut evidence that the burglary occurred on a date other than alleged in the charging information because the State failed to disclose Officer Dellinger as its rebuttal witness. We disagree.

Absent clear error and resulting prejudice, the trial court's determinations as to discovery violations and sanctions should not be overturned. *Cliver v. State*, 666 N.E.2d 59, 64 (Ind.1996) (citation omitted). Here, assuming that Sangsland could demonstrate that the State failed to comply with discovery, we are still unpersuaded that he suffered any harm as a result of the trial court's refusal to exclude Officer Dellinger's testimony. First, the evidence supporting Sangsland's convictions was overwhelming. Second, as noted above, proof of the precise dates alleged in the State's answer to the notice of alibi was not necessary to sustain his convictions. Thus, even assuming that the State had been prevented from rebutting defense evidence suggesting that the crimes occurred on or before February 5, his convictions would still stand. We therefore find no abuse of discretion in refusing to preclude the State's rebuttal witness.

## III. *Brady Violation*

After Sangsland presented the testimony from his mother to demonstrate that the burglary and theft of the guns occurred on or before February 5, 1997, the State disclosed a prior sworn statement made by Mr.

---

4. We further note that Sangsland cannot be heard to complain that he was somehow misled by the variance because it was Sangsland, not the State, who sought to prove it.

5. Apparently, the motion in limine was not in writing or documented as part of the record. Sangsland's counsel, however, referred to the motion in limine in challenging the admissibility of the State's rebuttal evidence. (R. 554).

Coffelt. In the sworn statement, Mr. Coffelt indicated that sometime between February 3 and 4, 1997, his rental property was vandalized and tools were taken from his garage, and that a "couple of days later" his residence was burglarized. (R. 590–91). On appeal, Sangsland contends that the State's delayed disclosure of this sworn statement precluded him from effectively using it to make strategic trial decisions crucial to his defense in violation of his right against self-incrimination, his right to assistance of counsel and compulsory process, and his right to a fair trial. Specifically, he argues that the State's delayed disclosure violated the dictates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.

■ In *Brady,* the United States Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). To succeed on a *Brady* claim, a defendant must establish (1) that the prosecution suppressed evidence; (2) that this evidence was favorable to the defense; and (3) that the evidence was material either to guilt or punishment. *United States v. Bagley,* 473 U.S. 667, 685, 105 S.Ct. 3375, 3385, 87 L.Ed.2d 481 (1985). Evidence is material under the *Brady* rule only if "there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different." *Id.,* at 682, 105 S.Ct. at 3383.

We initially note that the State did not suppress the sworn statement at issue but immediately disclosed it upon Sangsland's presentation of evidence supporting his theory that the burglary and theft occurred prior to the dates alleged in the State's answer to his notice of alibi. (See footnote 5). Other jurisdictions have stated that to the extent that the *Brady* rule applies to delayed disclosure claims, an aggrieved defendant must demonstrate prejudice arising from the delay. *See United States v. Sepulveda,* 15 F.3d 1161, 1179 (1st Cir.1993); *United States v. Neal,* 27 F.3d 1035, 1050 (5th Cir.1994), *cert. denied* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995); *United States v. Beale,* 921 F.2d 1412 (11th Cir.1991); *Cf. United States v. Dean,* 55 F.3d 640, 663 (D.C.Cir. 1995) ("When the government delays disclosing exculpatory evidence, the defendant must show a reasonable probability that an earlier disclosure would have changed the trial results."), *cert. denied* 516 U.S. 1184, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996); *United States v. Kelly,* 14 F.3d 1169, 1176 (7th Cir.1994).

■ Our examination of the record convinces us that there is no reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense earlier. First, Sangsland's counsel effectively used the sworn statement during the rebuttal testimony of Officer Dellinger and featured the statement in his closing argument. Second, earlier disclosure of the sworn statement would have not been especially damaging to Mr. Coffelt's credibility in light of the fact that at trial he candidly acknowledged on direct examination that he did not know when the burglary occurred and could not recall when he discovered that his guns were missing. Sangsland's counsel apparently recognized that the impeachment value of the sworn statement was negligible as counsel declined the opportunity to recall Coffelt to the stand to impeach or clarify his prior testimony. Finally, although Sangsland argues he would have strenuously objected to the State's efforts to secure his convictions through Deputy Vogely's testimony had he had the sworn statement during the State's case-in-chief, he fails to point to specific objections he might have lodged (but forewent) as a result of the State's alleged late disclosure. We see no basis for concluding that Sangsland was prejudiced or that the outcome could have been different if the statement had been disclosed earlier.

We affirm.

SHARPNACK, C.J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurring in result with separate opinion.

I concur in result.

While I agree that generally, time is not of the essence in proving a criminal offense, it "becomes of the essence after the invocation of the alibi statute." *Quillen v. State,* 271 Ind. 251, 391 N.E.2d 817, 819 (1979); *see also Baggett v. State,* 514 N.E.2d 1244 (Ind.1987); *Evans v. State,* 224 Ind. 428, 68 N.E.2d 546 (1946).

As the majority indicates, the State's answer alleged that the offenses occurred between February 9 and 11. "[T]he filing of an alibi defense does make the time of the alleged offense of the essence, ... [and] the effect of the State's answer to the notice of alibi is to restrict the State to proof of the date in the answer." *Jennings v. State,* 514 N.E.2d 836, 837 (Ind.1987) (citations omitted). Thus, the State had the burden to prove that the offenses occurred on or between the dates specified. "Where the State at trial restricts its proof to the time frame within the information or within its answer to the notice of alibi, it has met its obligation under Ind.Code Sec. 35-36-4-2." *Stewart v. State,* 521 N.E.2d 675, 676-77 (Ind.1988).

Here, the State did not restrict its proof to the time frame within its answer, February 9 to February 11. However, in order for the State to meet its burden, it is not a requirement that *all* the evidence presented indicates the offenses occurred within these dates. The question here is simply the sufficiency of the evidence: Was there sufficient evidence presented to prove that Sangsland committed the offenses between February 9 and 11? On this question, I agree with the majority that the evidence was sufficient. Therefore, while I believe that time was of the essence of the offenses, the State met its burden of proof in convicting Sangsland.