## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 23 2019, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Ronald Harris | Curtis T. Hill, Jr. |
| Michigan City, Indiana | Attorney General of Indiana |
| | J.T. Whitehead |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Ronald Harris, | July 23, 2019 |
| *Appellant-Defendant*, | Court of Appeals Case No. 18A-PC-2833 |
| v. | Appeal from the Porter Superior Court |
| State of Indiana, | The Honorable Jeffrey Clymer, Judge |
| *Appellee-Plaintiff*. | Trial Court Cause No. 64D02-9102-CF-19 |

**Brown, Judge.**

[1] Ronald Harris appeals the denial of his petition for post-conviction relief. We affirm.

## Facts and Procedural History

[2] The relevant facts as discussed in Harris's 1993 direct appeal follow:

> Portage police Sergeant Osberg found filling station attendant Harchand Dahliwahl dead in the Hudson Oil gas station in Portage. Dahliwahl had suffered a massive head wound determined to have been caused by a blast from a shotgun. Approximately $327 was missing from the station. During their investigation, police learned that Chris Peterson was involved in the robbery and killing. Police obtained a search warrant and recovered a sawed-off shotgun in Peterson's automobile.
>
> Following Peterson's arrest, his girlfriend, Marpessa Chase, informed police that Ronald Harris . . . was a friend of Peterson. Police then interviewed [Harris] on two separate occasions. Harris denied having anything to do with the shooting. He also denied the shootings in a taped telephone conversation with Chase. During an interview with FBI agents, [Harris] told them that he and Peterson "were driving around drinking and snorting cocaine when Peterson went in and shot a man."
>
> Following approximately six hours of interrogation, [Harris] made a statement to the officers wherein he acknowledged that he had known Peterson for many years and that following Peterson's service in the Marine Corps and his return home they renewed their friendship. He stated he knew that Peterson possessed a sawed-off shotgun and that he carried it with him.
>
> Just prior to the killing, they were driving around using cocaine, marijuana and drinking beer and Peterson became very angry because another driver cut him off in traffic. Shortly thereafter, while Peterson was still quite angry, they stopped at the filling station and Peterson entered and shot the attendant.

[Harris] claimed that after the shooting Peterson returned to the vehicle and that he yelled at him and asked him why he had done such a thing. [Harris] claimed he told Peterson he wanted nothing to do with the money Peterson obtained in the robbery and that he became frightened of Peterson fearing that he might kill him.

The police then investigated a very similar shooting which had occurred in Cedar Lake, Indiana. [Harris] admitted being with Peterson on the night of the Cedar Lake shooting and then made a statement that he and Peterson had been driving around in Peterson's car and went to Cedar Lake. He said Peterson stated he wanted to buy some "Tops" rolling papers and parked in a dark area near a filling station in Cedar Lake.

[Harris] claims he remained in the automobile. Peterson took the shotgun and entered the station. Thereafter [Harris] stated that he heard a loud noise like an automobile backfire. Shortly thereafter Peterson returned to the vehicle, placed the shotgun in the back seat, and covered it with his coat or a small blanket. He was carrying a dark colored purse which he handed to [Harris]. Various items from the purse and the purse itself were thrown from the car as they proceeded down the road and later were recovered.

In his statement, [Harris] acknowledged that since the shooting in Cedar Lake he had changed his physical appearance in that he had grown a moustache and a short beard. In addition, he cut his hair. He stated that on the night of the shooting his hair was at least collar length and described it as stringy in appearance.

After giving the second statement to the police, Harris was arrested for the Hudson Oil station shooting. During his statements and at trial, [Harris] claimed he merely accompanied Peterson and did not participate in the robberies or the shootings. Evidence concerning the Cedar Lake shooting was presented at the trial. Carrie Jillson testified that she and Rhonda Hammersley (the person killed at the Cedar Lake robbery) were

working from 2:30 to 10:30 p.m. at the Petro Mart gas station in Cedar Lake. As they were closing the station, they noticed a two-door car drive by slowly and the occupants looked at them. Approximately three to five minutes later, a man ran from behind the car and shot Hammersley in the head with a shotgun. Jillson testified that the gun then was placed against the back of her head but she heard someone say, "All right, that's enough. Let's go."

*Harris v. State*, 617 N.E.2d 912, 913-914 (Ind. 1993), *reh'g denied, overruled by*

*Wright v. State*, 690 N.E.2d 1098 (Ind. 1997), *reh'g denied*.

[3] On December 13, 1990, the State charged Harris with assisting a criminal as a class C felony, murder (aiding, inducing, or causing an offense), and felony murder. At trial,

Michael Lynn testified that he was incarcerated with [Harris]. During that time, [Harris] told Lynn that Peterson was his best friend, that they had been going out doing robberies and doing drugs and that they were shooting people during the robberies with a .12 gauge shotgun. He stated that he was nervous about this activity and that Peterson told him he could change his appearance with his haircut and his moustache. [Harris] told Lynn specifics concerning the robbery at the Hudson Oil station and also stated that he had been involved in the Cedar Lake shooting although he claimed that Peterson was the triggerman.

*Id.* at 914. After a trial, Harris was convicted as charged, and the court merged the count of aiding and inducing or causing murder into the felony murder conviction. *Id.* at 913. On direct appeal, the Indiana Supreme Court affirmed the convictions but held that the trial court erred in sentencing Harris on both

the assisting a criminal and the felony murder charges and remanded to merge the convictions of felony murder and assisting a criminal. *See id.* at 915-916.

[4] On remand, the trial court merged the assisting a criminal charge with the felony murder conviction and then found that the original felony murder sentence was appropriate, enhancing the forty-year sentence by twenty years for four aggravating circumstances. *Harris v. State*, 643 N.E.2d 309, 310 (Ind. 1994). Harris appealed and argued that the sixty-year sentence was improper because the trial court failed to set forth any mitigating circumstances. *Id.* The Indiana Supreme Court held that Harris was precluded from relitigating the issue on either *res judicata* or waiver grounds and affirmed the trial court. *Id.*

[5] On January 24, 1995, Harris, *pro se*, filed a petition for post-conviction relief.[1] On March 2, 1995, Attorney John Pinnow filed an appearance on behalf of Harris. On May 3, 1995, Harris's counsel filed a belated motion for an indefinite continuance, which the court granted. On December 2, 1996, Harris's counsel filed a verified motion to withdraw, which the post-conviction court granted.[2]

---

[1] The record does not contain a copy of Harris's petition for post-conviction relief.

[2] The record does not contain a copy of the motion to withdraw. Without citation to the record, Harris asserts that his counsel: stated that he had reviewed the record of proceedings from the trial, the direct appeal briefs, and opinions; spoke with trial and appellate counsel concerning the post-conviction allegations; spoke with him in person; withdrew his appearance because he had determined the petition was not meritorious; and provided him with an explanation of the reasons for withdrawal.

[6]    On August 28, 2003, Harris filed a motion for leave to amend petition and motion for appointment of counsel. On September 2, 2003, the court entered an order denying Harris's motion for appointment of counsel, granting Harris's motion to file an amended petition, and scheduling a hearing for November 21, 2003 on the amended petition.[3] On November 21, 2003, the court held a hearing. An entry in the chronological case summary dated November 21, 2003, states in part: "Deft requests continuance. Court grants request for continuance. Cause to be re-set for hrg at such time as the deft notifies this Court that he is ready to proceed to hrg on his amended petition for PCR." Appellant's Appendix Volume II at 14.

[7]    On March 1, 2018, Harris filed a "2ND VERIFIED AMENDMENT TO PETITION FOR POST-CONVICTION" in which he argued ineffectiveness of trial and appellate counsel with respect to certain jury instructions, lineup procedures, and the admission of evidence of other crimes.[4] *Id.* at 19. On May 24, 2018, the State filed an answer to Harris's second amended petition which denied all material allegations and asserted the defenses of *res judicata* and waiver.

---

[3] The record does not contain a copy of the 2003 amended petition.

[4] Without citation to the record, Harris asserts that he sought assistance from the Public Defender's Office in October 2018, that the case was again referred to Attorney Pinnow, and that Attorney Pinnow made the claim that he had reviewed his prior case file as well as the petition filed on March 1, 2018, and that it was his opinion that the claim of newly discovered evidence held no merit and filed a notice of non-representation.

On October 23, 2018, the court entered an order denying Harris's March 2018 filing. Specifically, the court's order states:

> On March 1, 2018, [Harris], pro-se, filed with the Court a 2nd Verified Amendment to Petition for Post-Conviction. The State of Indiana filed an answer on May 24, 2018 with the Court.
>
> After review of the Petitioner's Motion, the State's answer and the Court files in this cause, the Court finds as follows:
>
> 1. On January 24, 1995, [Harris], pro-se, filed a Petition for Post-Conviction Relief.
>
> 2. The State of Indiana filed a Response to the first PCR Petition on February 2, 1995.
>
> 3. On February 24, 1995, the Public Defender of Indiana appointed counsel to represent the Petition for purposes of Post-Conviction Relief filed on January 24, 1995.
>
> 4. On March 2, 1995, Attorney John Pinnow of the State's Public Defender's Office entered an appearance on behalf of [Harris].
>
> 5. On December 2, 1996, Attorney Pinnow filed a Motion to Withdraw his appearance.
>
> 6. On December 6, 1996, the Court granted Attorney Pinnow's Motion to Withdraw.
>
> 7. On August 28, 2003, [Harris], pro-se, filed a Motion for Leave to Amend Petition for Post-Conviction Relief, Amended Petition for Post-Conviction Relief and a Motion for Appointment of Counsel.
>
> 8. On August 28, 2003, the State of Indiana filed an Objection to [Harris's] Motion for Appointment of Counsel and a Response to [Harris's] Amended Petition for Post-Conviction Relief.

9. On September 2, 2003, The Court Denied [Harris's] Motion for Counsel and Granted [Harris's] Motion and ordered the Amended Petition be filed of record. The Court also set the matter for Hearing on November 21, 2003 at 1:30 pm and [Harris] was ordered to be transported from the Indiana Department of Correction.

10. On November 21, 2003, a Hearing was held at which time [Harris] requested a continuance in order to present additional research and/or evidence on his amended petition. Court granted [Harris's] request and hearing was to be re-set once [Harris] notified the Court he was ready to proceed.

11. On March 1, 2018, [Harris], pro-se, filed a 2nd Verified Amendment to Petition for Post-Conviction Relief.

12. On May 24, 2018, the State of Indiana filed an Answer to [Harris's] Second Amended Petition for Post-Conviction Relief.

The Court finds this is a successive petition and the Petitioner has not complied with Post Conviction Relief section 12. The Court also finds that the Court does not have jurisdiction as this petition has not been authorized by the Court of Appeals to file. Therefore, the Court does now, without hearing, DENY, [Harris's] 2nd Verified Amendment to Petition for Post-Conviction Relief.

*Id.* at 60-61.

## *Discussion*

Before addressing Harris's allegations of error, we observe that Harris is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. Harris asks that we examine the second amended petition filed on March 1,

2018. He argues that he had an absolute right to amend the petition prior to judgment. Without citation to the record, he asserts that his convictions should be overturned and his sentence vacated because "the principal (Christopher Peterson AKA Obadyah Ben-Yisrayl) was acquitted of (an) alleged murder in a separate jury trial, and had a writ of habeas corpus granted where the Porter County Prosecutor refused to retry the principal of the crimes that [he] is currently convicted of as an accomplice." Appellant's Brief at 20-21 (underlining omitted).[5] The State asserts that the post-conviction court properly denied Harris's petition because: it constituted a successive petition and this Court had not yet approved a successive petition; Harris no longer had, as a matter of right, leave to amend the petition; and his claims are precluded based upon *res judicata*.

[10] Ind. Post-Conviction Rule 1(12) governs successive petitions and provides:

> (a) A petitioner may request a second, or successive, Petition for Post-Conviction Relief by completing a properly and legibly completed Successive Post-Conviction Relief Rule 1 Petition Form in substantial compliance with the form appended to this Rule. Both the Successive Post-Conviction Relief Rule 1 Petition Form and the proposed successive petition for post-conviction

---

[5] Harris asserts elsewhere in his brief that Ben-Yisrayl's conviction was overturned and reversed by the United States Court of Appeals for the Seventh Circuit and appears to cite *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1053 (7th Cir. 2005), *reh'g and reh'g en banc denied*, which held that the prosecutor improperly challenged Ben-Yisrayl to explain his confession to the jury and invited the jury to infer guilt from his silence and to deem his confession reliable and accurate. The Seventh Circuit affirmed the district court's grant of Ben-Yisrayl's petition for writ of habeas corpus and remanded with instructions "to grant the writ unless the State of Indiana elects to retry him within 120 days from the issuance of this opinion." 431 F.3d at 1053. We note that Ben-Yisrayl was convicted of other murders. *See Peterson v. State*, 674 N.E.2d 528, 531 (Ind. 1996), *reh'g denied*, *cert. denied*, 522 U.S. 1078, 118 S. Ct. 858 (1998).

relief shall be sent to the Clerk of the Indiana Supreme Court, Indiana Court of Appeals, and Tax Court.

(b) The court will authorize the filing of the petition if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief. In making this determination, the court may consider applicable law, the petition, and materials from the petitioner's prior appellate and post-conviction proceedings including the record, briefs and court decisions, and any other material the court deems relevant.

(c) If the court authorizes the filing of the petition, it is to be (1) filed in the court where the petitioner's first post-conviction relief petition was adjudicated for consideration pursuant to this rule by the same judge if that judge is available, and (2) referred to the State Public Defender, who may represent the petitioner as provided in Section 9(a) of this Rule. Authorization to file a successive petition is not a determination on the merits for any other purpose and does not preclude summary disposition pursuant to Section (4)(g) of this Rule.

The "Form for Successive Post-Conviction Relief Petitions" under the Appendix to Post-Conviction Rule 1 references a decision on the merits. Specifically, it provides in part:

INSTRUCTIONS--READ CAREFULLY

If you have previously filed a Petition for Post-Conviction Relief directed to this conviction or these convictions and the earlier petition was decided on the *merits*, you must fill out this form and file it along with your Petition. It must be legibly handwritten or typewritten, signed by the petitioner before a person authorized to take oaths and properly notarized. Since this must be signed under oath, any false statement of a material fact herein may serve as the basis of prosecution and conviction for perjury. Exercise care to be sure all answers are true and correct.

You must mail the original and two copies of this form along with your petition to the Clerk of the Supreme Court and Court of Appeals . . . . The Clerk will refer your petition to the Supreme Court in death penalty cases and the Indiana Court of Appeals in all other cases. The court will then decide whether your petition may be filed in the trial court where your first Post-Conviction Remedy Rule 1 petition was adjudicated.

NOTE: The court will allow a second or successive petition for post-conviction relief to be filed if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief. However, a petitioner does not establish a reasonable possibility that the petitioner is entitled to post-conviction relief, for example, (1) if the petitioner only alleges grounds for relief that are not different from those which have already been decided on the *merits*, or (2) if the only grounds alleged, even if different, should have been alleged in an earlier proceeding.

Appendix to Ind. Post-Conviction Rule 1 (Emphases added).

[12] Even assuming that Harris's March 1, 2018 filing did not constitute a successive petition because a decision on the merits had not been previously rendered, we cannot say that reversal is warranted.

[13] Ind. Post-Conviction Rule 1(4)(c) provides in part that "[t]he petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial" and that "[a]ny later amendment of the petition shall be by leave of the court." "[T]he plain language of the Rule compels us to review the post-conviction court's actions in this regard under an abuse of discretion standard." *Tapia v. State*, 753 N.E.2d 581, 584 (Ind. 2001). "Outside of the plain language of the rule, two additional

arguments support an abuse of discretion review." *Id.* "First, employing an abuse of discretion standard gives the post-conviction court the ability to curtail attempts by petitioners, including those in capital cases, to delay final judgment on their petitions." *Id.* "Second, abuse of discretion is the well-established standard of review for voluntary motions to dismiss in the somewhat rare cases when such motions are subject to appeal." *Id.*

[14] The record reveals that Harris, *pro se*, filed his petition for post-conviction relief on January 24, 1995, and that the court granted the filing of an amended petition on September 2, 2003, scheduled a hearing on the second amended petition for November 21, 2003, and held a hearing that day. Harris filed his March 1, 2018 second verified amendment to his petition more than fourteen years after November 21, 2003. Thus, the amendment required leave of the court. We cannot say the court abused its discretion.[6]

[15] We also observe that the record does not contain a copy of Harris's initial January 24, 1995 petition for post-conviction relief or his amended petition filed in 2003. Harris does not refer to these petitions. Rather, he asks that we

---

[6] To support his assertion that he had an absolute right to amend the petition prior to judgment, Harris cites *Neeley v. State*, 269 Ind. 588, 382 N.E.2d 714 (1978), *overruled on other grounds by German v. State*, 428 N.E.2d 234 (Ind. 1981). At the time *Neeley* was decided, Ind. Post-Conviction Rule 1(4)(c) provided: "At any time prior to entry of judgment the court may grant leave to withdraw the petition, and the petitioner shall be given leave to amend the petition as a matter of right." The Indiana Supreme Court in *Neeley* held that "[t]he second phrase of Ind. R. P.C. 1 § 4(c) grants the petitioner an absolute right to amend a present petition for post-conviction relief prior to judgment." *Neeley*, 269 Ind. at 591, 382 N.E.2d at 716. In 1995, Ind. Post-Conviction Rule 1(4)(c) was amended to provide: "At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court."

"examine the Amendment filed on March 01, 2018." Appellant's Brief at 18. Under the circumstances, we cannot say that reversal is warranted.

[16] For the foregoing reasons, we affirm the post-conviction court.

[17] Affirmed.

May, J., and Mathias, J., concur.